**Richard B. SAGERS**

v.

**YELLOW FREIGHT SYSTEM, INC., et al.**

**Civ. A. No. 14510.**

United States District Court,
N. D. Georgia,
Atlanta Division.
Sept. 27, 1973.

See also, D.C., 58 F.R.D. 54, 388 F. Supp. 528.

Elizabeth R. Rindskopf, Atlanta, Ga., Jack Greenberg and William L. Robinson, New York City, for plaintiff.

Fisher & Phillips, Robert L. Mitchell, Atlanta, Ga., Mullinax, Wells, Mauzy & Babb, Dallas, Tex., for defendants.

## ORDER

RICHARD C. FREEMAN, District Judge.

This is a class action seeking declaratory and injunctive relief and money damages for alleged racial discrimination in employment. Jurisdiction, asserted to exist pursuant to 28 U.S.C. § 1343 to remedy the alleged deprivation of rights secured under Title VII of the Civil Rights Act of 1964 ("the Act"), 42 U.S.C. § 2000e et seq., and 42 U.S.C. §

1981, is not being challenged, except as noted below. See Part I.[1] Named as defendants are a trucking company ("Yellow Freight"), a local union ("Local 728") and the regional and international Teamsters organizations to which the local belongs ("the Unions"). Defendant Yellow Freight admits that it is a company with general offices in Kansas City, Missouri, and that it operates a terminal in Marietta, Georgia, which is within the jurisdiction of this court. It further admits that it is covered by Title VII of the Civil Rights Act of 1964. See § 701(b) of the Act, 42 U.S. C. § 2000e(b). The Unions and Local 728 are labor unions covered by Title VII of the Act. See § 701(d) and (e)(3) of the Act, 42 U.S.C. § 2000e(d) and (e)(3). The individual plaintiff is a black citizen of the United States and the State of Georgia. He is employed by defendant Yellow Freight and is a member of the various defendant unions.

Plaintiff alleges that defendant Yellow Freight had a prior policy of hiring only whites into the well-paying job classification of road driver. He alleges that defendant Yellow Freight has a policy of prohibiting transfer between the various job classifications. Transfer is allegedly permitted only by resignation and re-employment at another terminal. Further, plaintiff alleges that the defendant unions, pursuant to collective bargaining agreements, maintain separate seniority rosters, for job bidding and layoff purposes, for each bargaining unit. At the various terminals, road drivers constitute a bargaining unit separate from those of employees in other job classifications. Thus, an employee who transfers into the job classification of road driver by resigning and being re-employed at another terminal of Yellow Freight loses any previously accumulated seniority. The essence of plaintiff's claim is that the no-transfer and seniority policies discriminate against the plaintiff and the class by "locking"

them into job classifications, other than road driver, to which they had previously been relegated by the above mentioned discriminatory hiring practices. Plaintiff seeks an order from the court allowing the plaintiff and the class an opportunity to transfer into the road driver job classification without loss of seniority.

Plaintiff also alleges that, despite the no-transfer rule, the defendants have granted to a number of white employees leaves of absence in order that they might have a trial period in a different job classification. During such leave the employee could allegedly return to his prior position without loss of seniority. Plaintiff alleges that he was denied such a leave of absence on the basis of race. As further discussed below, this denial allegedly caused him to lose fourteen years of accummulated seniority.

In its order dated July 21, 1972, this court ruled that the action was maintainable as a Rule 23(b)(2) class action. We stated that the class shall include all black employees of Yellow Freight, excluding office and supervisory personnel, who are employed within the area covered by the Southern Conference of Teamsters, that is, the states of Alabama, Arkansas, Florida, Georgia, Louisiana, Mississippi, Oklahoma, Tennessee and Texas. Members of the class and local unions in the Southern Conference area were notified of the pendency of the action. The action is before the court on plaintiff's motion for partial summary judgment and defendant Yellow Freight's motion for summary judgment.

In his motion for summary judgment plaintiff asks this court to rule that (1) defendant Yellow Freight has in the past excluded black persons from the job of road driver and has limited black persons to other jobs because of their race or color; (2) defendants' no-transfer policy and separate seniority list for

---

1. Three of the defendants have previously moved to dismiss for lack of subject matter jurisdiction. These motions were denied. See orders of March 15, 1971, and July 21, 1972. These defendants no longer assert the lack of subject matter jurisdiction.

road drivers is racially discriminatory and violates Title VII and 42 U.S.C. § 1981; (3) the transfer and seniority policies violated the plaintiff's rights and defendants discriminatorily denied the plaintiff the opportunity to transfer, on the basis of his race; and (4) the plaintiff and the class he represents are entitled to appropriate relief from defendants' unlawful practices and their effects, including modification of the no-transfer rule and applicable seniority provisions.

Rule 56(a), Fed.R.Civ.P., permits a claimant to move for summary judgment "upon all or any part" of his claim. Rule 56(c) deals with the proceedings on a motion for summary judgment and provides, in part:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages.

The burden is on the movant to show that there is no genuine issue as to material fact and that he is entitled to judgment as a matter of law. Shahid v. Gulf Power Co., 291 F.2d 422 (5th Cir. 1961), cert. denied, 370 U.S. 923, 82 S. Ct. 1563, 8 L.Ed.2d 503 (1962). Further, all inferences or fact must be drawn against the movant, whose papers will be closely scrutinized. Pogue v. Great Atlantic & Pacific Tea Co., 242 F. 2d 575 (5th Cir. 1957). However, the submission of important, difficult, or complicated questions of law is not a bar to a summary judgment. Palmer v. Chamberlin, 191 F.2d 532, 540 (5th Cir. 1951).

A summary judgment in an action charging racial discrimination in employment is rarely seen; such actions normally involve many issues of fact as well as complex issues of law. However, the court is here presented with an unusual situation. Defendant Yellow Freight, the employer charged with violations of Title VII and 42 U.S.C. § 1981, agrees with the plaintiff that partial summary judgment is proper at this stage of the litigation and that there are no disputed issues of fact.[2] Further, the Fifth Circuit has ruled on several occasions on similar allegations of racial discrimination in the trucking industry. See Witherspoon v. Mercury Freight Lines, Inc., 457 F.2d 496 (5th Cir. 1972); Bing v. Roadway Express, Inc., 444 F.2d 687 (5th Cir. 1971), citing with approval, Jones v. Lee Way Motor Freight Co., 431 F.2d 245 (10th Cir. 1970), cert. denied, 401 U.S. 954, 91 S. Ct. 972, 28 L.Ed.2d 237 (1971).[3]

I. THE CHARGE FILED WITH THE EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

Before addressing itself to the merits of the summary judgment motion, defendant Local 728 contends that the charge filed with the Equal Employment Opportunity Commission ("EEOC") was untimely and too limited in scope to support the instant action.[4] Local 728 asserts that the original charge filed with the EEOC on March 12, 1969, named only the employer and that an amendment to the charge, filed on September 21, 1970, was long after the ninety-day limitation period provided in § 706 of the Act.

The claims of discrimination in violation of Title VII which are common

---

2. Local 728 and the Unions, however, do assert that there are disputed issues of fact.

3. The court relies on these cases as to its conclusions of law rather than as to the propriety of summary judgment.

4. An allegation of lack of subject matter jurisdiction can be considered at any time. See Rule 12(h)(3). However, it should be noted that defendant Yellow Freight has previously moved to dismiss on these grounds and that the court denied the motion. See order of March 15, 1971.

to the class challenged the maintenance by the defendants of the transfer and seniority rules which allegedly perpetuate past discrimination in hiring. The alleged violations of the Act by maintenance of such a system is clearly continuing in nature and, thus, the ninety-day period is of little practical effect. See King v. Georgia Power Co., 295 F. Supp. 943, 946 (N.D.Ga.1968); Culpepper v. Reynolds Metals Co., 296 F.Supp. 1232 (N.D.Ga.1969), rev'd on other grounds, 421 F.2d 888 (5th Cir. 1970).

Plaintiff Sagers not only claims a violation of his statutory rights as a member of the plaintiff class, he also alleges that he was denied a leave of absence on the basis of race, which denial resulted in the loss of fourteen years seniority for bidding and layoff purposes. The record is clear that Sagers' requests for a leave of absence were denied in early November 1969. He filed a grievance with the union (Local 728) on December 12, 1969. On March 12, 1970, he filed a charge of racial discrimination, naming the employer, with the EEOC. His grievance filed with the local union was denied on May 4, 1970. The next day he amended his EEOC complaint to name the union as well as the employer.

■■■■ When on December 12, 1969, the plaintiff invoked his contractual grievance remedies in an effort to seek private settlement of his individual charge of racial discrimination, the statute of limitations was tolled. Culpepper v. Reynolds Metals Co., 421 F.2d 888, 891 (5th Cir. 1970). Further, it is clear that invocation of these remedies did not have the effect of barring the plaintiff from seeking a Title VII remedy in the federal courts. Hutchings v. United States Indus., Inc., 428 F.2d 303, 309 (5th Cir. 1970). By amending the charge filed with the EEOC the day after the denial of his grievance with the

union, the plaintiff's complaint to the EEOC was clearly timely.

■■■■ Local 728 also asserts that plaintiff's charge to the EEOC is limited to the allegedly discriminatory denial of a leave of absence and did not include a complaint as to the denial of the right to transfer from the position of city driver to that of road driver. However, it is clear that plaintiff was seeking a leave of absence because the no-transfer policy of the company would force him to resign before taking the new position and because the transfer would be accompanied by the loss of substantial accumulated seniority. Indeed, this was the result upon denial of the leave of absence. As stated in Danner v. Phillips Petroleum Co., 447 F.2d 159 (5th Cir. 1971):

> The courts have consistently held that the charges upon which complaints of discrimination are based should be construed liberally. . . .

> The correct rule to follow in construing EEOC charges for purposes of delineating the proper scope of a subsequent judicial inquiry is that

>> the complaint is the civil action . . . may properly encompass any . . . discrimination like or reasonably related to the allegations of the charge and growing out of such allegations . . . .

447 F.2d at 161–162, quoting from King v. Georgia Power Co., *supra*. In light of the above rule this court finds that Local 728's contention that the EEOC charge is too narrow to support the instant action is without merit.[5]

## II. DISCRIMINATION IN HIRING OF ROAD DRIVERS

Mainly on the basis of Yellow Freight's answers to interrogatories and

5. Even if we found that the charges were untimely and not even remotely related to those pressed before the EEOC, the plaintiff still would be entitled to pursue his completely independent remedy under 42 U.S.C. § 1981. Hill v. American Airlines, 479 F.2d 1057, (5th Cir. 1973); Caldwell v. National Brewing Co., 443 F.2d 1044 (5th Cir. 1971), cert. denied, 405 U.S. 916, 92 S.Ct. 931, 30 L.Ed.2d 785. See Sanders v. Dobbs Houses, Inc., 431 F.2d 1097 (5th Cir. 1970), cert. denied, 401 U.S. 948, 91 S.Ct. 935, 28 L.Ed.2d 231.

of the deposition of Stephen P. Murphy, vice-president, assistant secretary and chief legal officer of Yellow Freight, plaintiff makes a number of allegations as to Yellow Freight's hiring history. Plaintiff alleges that prior to 1968 only one black person was employed as a road driver for Yellow Freight in its entire nationwide system; he was not employed within the Southern Conference area. Plaintiff further alleges that as of May 1, 1972, only 3.7 percent of Yellow Freight's road drivers were black and that 55 percent of these black road drivers were hired after January 1, 1971, and, thus, subsequent to the filing of this action.

Plaintiff also sets forth statistical evidence of hiring within the Southern Conference area. Yellow Freight maintains twenty-two terminals within this area; at eight of these terminals road drivers are domiciled. Plaintiff alleges that in 1968 there were approximately 150 road drivers within the Southern Conference area, none of whom were black.[6] He further alleges that as of May 12, 1972, blacks comprised only 3.6 percent of the road drivers domiciled at terminals in the Southern Conference area; of the total work force within this area at that time, slightly more than 10 percent were black. Plaintiff relies almost exclusively on statistical evidence to support its claim of racial discrimination by Yellow Freight in its hiring of road drivers.

Yellow Freight does not seek to rebut the statistical evidence as to hiring. As these statistics were furnished by the employer and their accuracy is not called into question, the court finds that the statistics accurately reflect the hiring practices of Yellow Freight nationwide and in the Southern Conference area. As to hiring before July 1, 1968, Yellow Freight states that "the inescapable fact is that prior to July 1, 1968, virtually all the company's over-the-road drivers were white employees." Denying any intention to discriminate, Yellow Freight asserts that after that date there cannot be said to have been any racial discrimination because its aggressive recruitment of black employees and its system of internal quotas had a demonstrable effect on Yellow Freight's racial hiring statistics. To support this assertion it relies on national, rather than Southern Conference, statistics because its hiring policies are allegedly uniform systemwide and because two of its terminals in the Southern Conference area did not hire any road drivers for a period of time.

Although the Unions purport to defer to Yellow Freight's defense of its hiring policies and practices, they assert that there exists a substantial dispute of fact as to the allegation that plaintiff and the class were discriminately placed in non-road jobs. They rely on McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), to show that there is no agreement among the parties as to the evidence required before judgment can be rendered for the plaintiff. The Unions also assert that plaintiff must prove, and they deny, that road jobs are more desirable than jobs presently held by the plaintiff and the class. This denial is supported by an affidavit of W. C. Smith, employed as an international organizer by the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America ("International"). Local 728 does not address itself to the allegations of racial discrimination in the hiring of road drivers.

■ In dealing with the allegations of the parties the court, while aware of the heavy burden of proof on a movant for summary judgment, points out that Title VII is to be accorded a liberal construction in order to carry out the purpose of Congress to eliminate the inconvenience, unfairness and humiliation of

6. Plaintiff alleges that immediately prior to its acquisition by Yellow Freight in 1964, Watson-Wilson Transportation System, Inc. employed some 450 road drivers all of whom were white. However, Watson-Wilson's operations were not confined to the Southern Conference area.

racial discrimination. Parham v. Southwestern Bell Telephone Co., 433 F.2d 421 (8th Cir. 1970). And, as stated by the Supreme Court in Griggs v. Duke Power Co., 401 U.S. 424, 429–430, 91 S.Ct. 849, 853, 28 L.Ed.2d 158 (1971):

> The objective of Congress in the enactment of Title VII is plain from the language of the statute. It was to achieve equality of employment opportunities and remove barriers that have operated in the past to favor an identifiable group of white employees.

■■ The plaintiff, relies chiefly on statistical evidence in support of its contention that Yellow Freight has in the past excluded black persons from the job of road driver. In several other cases also involving discrimination in the trucking industry the Fifth Circuit has emphasized the importance of statistical evidence to the determination of whether Title VII had been violated. Witherspoon v. Mercury Freight Lines, Inc., *supra;* Bing v. Roadway Express, Inc., *supra.* As stated in the *Bing* decision:

> [I]n the problem of racial discrimination, statistics often tell much, and the Courts listen. 444 F.2d at 689 (citations omitted).

These two Fifth Circuit decisions, as well as Jones v. Lee Way Motor Freight Co., *supra,* and Rowe v. General Motors Corp., 457 F.2d 348 (5th Cir. 1972), state that once the plaintiff has established a prima facie case by setting forth figures of this kind, the burden is on the employer to sufficiently explain the disparity in hiring; conclusory statements that the employer never discriminated in hiring are insufficient to satisfy this burden. Further, it has been held that statistics can, as a matter of law, establish a violation of Title VII. Parham v. Southwestern Bell Telephone Co., *supra.*

■ Yellow Freight seeks to explain the lack of black road drivers by pointing out that it requires two years driving experience for the road driver position. Stressing that it has had few job applications from black applicants, Yellow Freight surmises that "they were unable or unwilling to obtain this prior driving experience before applying to Yellow." It is clear that Congress did not intend by enacting Title VII to guarantee a job to every person regardless of qualifications. Griggs v. Duke Power Co., *supra,* 401 U.S. at 431, 91 S. Ct. 849. However, Yellow Freight's recent successes in the recruitment of black road drivers belies any notion that blacks as a class were or are disqualified from the road driver position. Yellow Freight states that the prior driving experience requirement is similar to other nationwide motor freight carriers; yet, other decisions, cited above, show that blacks have been discriminated against in the trucking industry. The unrefuted statistics in the action *sub judice* indicate that a similar situation is presented here.

■ That few blacks applied for the road driver position is not dispositive. See Jones v. Lee Way Motor Freight, Inc., *supra,* 431 F.2d at 242. Title VII imposes an affirmative duty on employers to undo the effects of past discrimination. Local 189, United Papermakers and Paperworkers, A.F.L.–C.I.O., C. L.C. v. United States, 416 F.2d 980 (5th Cir. 1969), cert. denied, 397 U.S. 919, 90 S.Ct. 926, 25 L.Ed.2d 100 (1970) (hereinafter "Local 189, etc. v. United States"). In Lea v. Cone Mills Corp., 301 F.Supp. 97 (M.D.N.C.1969), aff'd in part, rev'd in part on other grounds, 438 F.2d 86 (4th Cir. 1971), the court found racial discrimination in hiring by a textile manufacturer. Emphasizing the importance of statistical evidence, it continued:

> The fact that no Negro females had applied for employment before the spring of 1965 does not, contrary to the argument of defendant, show either lack of interest or disprove discrimination. The more plausible explanation of this inaction is that, because of defendant's hiring practices over a long period of years, Negro females felt their efforts to obtain employment would be futile.

**516**

Yellow Freight's explanation is further weakened by its admission of discrimination by some of its local hiring officers.[7]

The court has considered national as well as regional statistics. It feels that in this case, the regional, i. e. Southern Conference, statistics are the relevant evidence for the determination of the question of racial discrimination in hiring. Not only has the class been limited to certain employees within the Southern Conference area, but Yellow Freight has admitted its reliance on, and the periodic resistance of, local hiring agents. The asserted distortion of these figures by the lack of hiring at the Nashville and Dallas terminals might have been relevant but for the fact that even when hiring was resumed at these terminals, only whites were hired as road drivers. Other courts have relied on statistical evidence limited to the area of alleged discrimination. See, *e. g.*, Parham v. Southwestern Bell Telephone Co., *supra* (company's Arkansas employment statistics considered); Lea v. Cone Mills Corp., *supra* (statistics at one plant utilized).

Yellow Freight emphasizes that it has never intended to exclude minorities from road driver jobs. Section 706(g) of the Act, 42 U.S.C. § 2000e–5(g), authorizes the court to grant affirmative relief if it finds that "the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint." However, the plaintiff need not prove a specific, present intent to discriminate. United States v. Jacksonville Terminal Co., 451 F.2d 418, 443 (5th Cir. 1971), cert. denied, 406 U.S. 906, 92 S.Ct. 1607, 31 L.Ed.2d 815. The statute requires only that the defendant meant to do what he did, that is, his employment practice was not accidental. Local 189, etc. v. United States, *supra*, 416 F. 2d at 996.

The Unions' reliance on McDonnell-Douglas Corp. v. Green, *supra*, as requiring plaintiffs to show that they sought and were qualified for road jobs, is misplaced. The *McDonnell-Douglas* case was a "private, single-plaintiff action challenging employment discrimination." 93 S.Ct. at 1823, 36 L.Ed.2d at 676. The plaintiff there alleged that he had been discriminated against due to his participation in unlawful protest activities. The Court specified the nature of plaintiff's burden of proof in this type of case. However, the Court stated that the burden of proof may be different where the allegations did not involve a single alleged incident of discimination as in the case before it. "The facts will vary in Title VII cases, and the specification above of the prima facie proof required from the complainant is not necessarily applicable in every respect to differing factual situations." 93 S.Ct. at 1824, 36 L.Ed.2d at 677–678 n. 13. This court does not feel that the Supreme Court sought to overrule the concensus among various Circuits that plaintiffs can make out a prima facie case of racial discrimination in hiring by means of statistical evidence.

The Union's contention that plaintiff must prove that road jobs are more desirable than the jobs presently held by the plaintiff and the class which he represents is without merit. While the job of road driver has been referred to by the Fifth Circuit as a "more highly regarded and sought after position," Witherspoon v. Mercury Freight Lines, Inc., *supra*, 457 F.2d at 497, the question of which job is more desirable is not relevant to the determination of discrimination in violation of Title VII. Congress sought in the enactment of Title VII to achieve "equality of employment *opportunities* . . . ", Griggs v. Duke Power Co., *supra*, 401 U.S. at 429, 91 S.Ct. 849 (emphasis added), not to assure separate but equal employment. See also United States v. Hayes Int'l Corp., 415 F.2d 1038, 1043 (5th Cir. 1969) (" . . . Title VII of the 1964 Civil Rights Act is not an equal pay pro-

---

7. This admission is found in the deposition of Stephen P. Murphy.

vision but an equal opportunity to the *full* enjoyment of employment rights.")

Accordingly, the court finds that defendant Yellow Freight has in the past excluded black persons from the job of road driver and has limited black employees to jobs other than that of road driver on the basis of race or color. Yellow Freight, relying on national statistics, urges that any discimination in hiring ceased by July 1, 1968. The plaintiff disagrees. However, as the parties have not fully briefed the question of when the disciminatory hiring practices ceased, the court feels that summary judgment as to the length of discrimination is not appropriate at this time, except to find, generally, that discrimination in hiring existed in the past.

## III. THE NO-TRANSFER RULE

In the motion for partial summary judgment plaintiff asks the court to rule that the defendants' maintenance of a separate seniority list for road drivers, together with a policy of prohibiting transfer into the road driver position from jobs on other seniority lists, is racially discriminatory in violation of Title VII and 42 U.S.C. § 1981 and that the defendants' transfer and seniority policies violated plaintiff's rights and discriminatorily denied him an opportunity to transfer on the same basis as other persons on the basis of his race.

The record establishes that in the various terminals in the Southern Conference area Yellow Freight's employees are classified into a number of different departments and that in every instance where road drivers are domiciled they constitute a separate job classification from those of all other employees. Within the Southern Conference area the General Freight Division employees of Yellow Freight, with whom the present action is concerned, are divided into seven job classifications: road drivers, city drivers, checkers, dockmen, office employees, supervisory personnel, and garage employees. The employees in these job classifications, are grouped into four separate bargaining units:

road drivers; city drivers, checkers and dockmen; maintenance and garage employees; and office and clerical employees.

It is Yellow Freight's admitted policy to refuse to allow employees to transfer into the road driver category from any other job classification. The flat rule against transfers is qualified only by the fact that employees are permitted to "transfer" by resigning and being reemployed at a different terminal as a road driver. Such an employee is treated as a new employee of Yellow Freight and loses accumulated seniority acquired during his prior employment with the company. The plaintiff contends that certain white employees have been permitted to transfer with "retreat rights", that is, with the opportunity to return, within a specified period of time, to his prior job classification without loss of seniority. The defendants stress that the policy is neutral and applied to all employees.

Accepting, for purposes of the claims common to the class, the defendants' characterization of the policy as neutral, the court must determine whether it is an unfair employment practice under § 703(a)(2) of the Act, 42 U.S.C. § 2000e–2(a)(2), which provides:

(a) It shall be an unlawful employment practice for an employer—

.  .  .  .  .

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect his employment status as an employee, because of such individual's race, color, religion, sex, or national origin.

While the effective date of Title VII was July 2, 1965, it can be a present unlawful employment practice to lock an employee into a position where he was placed due to race, color, religion, sex, or national origin prior to the effective date of the Act. As stated by the Supreme Court in

Griggs v. Duke Power Co., *supra,* 401 U.S. at 430, 91 S.Ct. at 853:

> Under the Act, practices, procedures, or tests neutral on their face, and even neutral in terms of intent, cannot be maintained if they operate to "freeze" the status quo of prior discriminatory employment practices.

■ In order to determine whether the no-transfer rule at issue in Bing v. Roadway Express, Inc., *supra,* constituted an unlawful employment practice, the court used the standard which it had set forth in a prior decision, Local 189, etc. v. United States, *supra,* and which was utilized in Jones v. Lee Way Motor Freight, Inc., *supra:*

> "When an employer or union has discriminated in the past and when its present policies renew or exaggerate disciminatory effects, those policies must yield, unless there is an overriding legitimate, non-racial business purpose." . . . Once it is established that an employer or union has discriminated in the past, then, the inquiry is twofold: (1) Does the present policy perpetuate the past discrimination? (2) Is the present policy justified by a showing of business necessity?

It is clear to this court that the no-transfer policy of Yellow Freight, like the similar no-transfer policies discussed in the *Bing* and *Witherspoon* decisions,[8] perpetuates past discrimination in hiring. Indeed, the employer in the instant case agrees that if certain employees have been discriminatorily denied the opportunity to hold the road driver's job, an opportunity to transfer to such a job should be permitted.

■ Yellow Freight does not assert that there is a business justification for the no-transfer policy which would override providing the class an opportunity to transfer to the road driver position. The Unions set forth several grounds as to the business necessity for separate bargaining units, collective bargaining agreements and seniority rosters, which grounds seem to pertain to the need for the no-transfer rule rather than the loss of seniority upon transfer. They state that Department of Transportation regulations make impracticable the interchange of employees between road jobs and other classifications and stress the city driver's function as driver-salesman and the absolute necessity of their knowing both their routes and clients.

The Department of Transportation regulations do not furnish an overriding business justification to prohibit the class an opportunity to transfer to the road driver position. Certainly, any member of the class wishing to transfer must have the proper initial qualifications for the position. See, Griggs v. Duke Power Co., *supra,* 401 U.S. at 430, 91 S.Ct. 849. While the opportunity to transfer into the road driver position may cause some vacancies in the city driver category, the replacement problems which would be faced by the employer would not differ from those faced when vacancies occur for other reasons. The city driver's unique functions and skills may justify treating it as a separate job classification from that of road driver; it does not constitute an overriding business justification for denying qualified city drivers the opportunity to transfer to the road driver position where the latter position was initially closed to them on the basis of race.[9] Accordingly, the court finds that the no-transfer policy of Yellow Freight is

---

8. These two cases, as well as Jones v. Lee Way Motor Freight, Inc., *supra,* discuss the lock-in effect of the no-transfer rule in the motor freight industry.

9. In Bing v. Roadway Express, Inc., *supra,* the court rejected (as demonstrating business necessity for the no-transfer rules there in question) assertions that transfers necessitate additional training costs, that road driving requires different skills than city driving and that transfers cause labor problems because the job categories in question were covered by different union contracts.

not justified by a showing of business necessity.

## IV. LOSS OF SENIORITY UPON TRANSFER

As stated above, plaintiff asks the court to rule that defendants' maintenance of a separate seniority list for road drivers, together with a policy prohibiting transfer into those jobs from jobs on other seniority lists, is racially discriminatory in violation of Title VII and 42 U.S.C. § 1981.[10] Yellow Freight's road drivers are organized into bargaining units separate from the bargaining units of other employees of Yellow Freight. For many years these units have operated under the National Master Freight Agreement and a separate area supplemental agreement; each unit is covered by a separate supplemental agreement and each have separate seniority rosters.[11] While unit seniority is not a factor in promotions or demotions, seniority within the particular bargaining unit determines job bidding, shift preference and lay-off. The employees with the greatest seniority in the unit will thus be able to get the preferred routes and avoid frequent lay-offs.

While no provision in these contracts expressly prohibits transfer between the road driver position and other jobs within the company, it is undisputed that upon transfer to a new bargaining unit an employee loses all accumulated seniority for job bidding, shift preference and lay-off purposes. With minor changes these seniority rules have been in effect for many years.

■■■ In determining whether maintenance of a separate seniority list for road drivers, together with the company's no-transfer policy, is an unfair employment practice as to the class under § 703(a)(2) and (c), the court notes that the rules governing seniority are neutral on their face. However, the Fifth Circuit in United States v. Jacksonville Terminal Co., *supra*, 451 F.2d at 450, stated that:

> Judicial recognition of the fact that even facially neutral seniority systems can serve to perpetuate racial discrimination has prompted modification of such systems under Title VII . . . 'The Act proscribes not only overt discrimination but also practices that are fair in form but discriminatory in operation.' Griggs v. Duke Power Co. . . . (extensive citation omitted).

See also Local 53 of the Int'l Ass'n of Heat and Frost Insulators and Asbestos Workers v. Vogler, 407 F.2d 1047 (5th Cir. 1969). Thus, the neutral nature of the seniority rules is not dispositive.

■■■ Although the Unions do not dispute the effect upon seniority upon transfer, they deny the lock-in effect of the separate seniority rosters.[12] They state that plaintiff Sagers is an example of an employee who, despite the contractually mandated loss of seniority, transferred into the road driver position. They also state in their response to plaintiff's motion for partial summary judgment that they "will adduce evidence of numerous other examples. (See Affidavit of W. C. Smith)". In that affidavit, W. C. Smith generally states that hundreds of employees in the Southern Conference area have transferred between job classifications and bargaining units. He offers no evidence of such transfers; nor does he state

---

10. Plaintiff's contention that these policies have violated the plaintiff's rights and that defendants discriminatorily denied him the opportunity to transfer on the same basis as other persons, on the basis of race, is discussed below. See Part V, *infra*.

11. See Order of July 21, 1972.

12. Yellow Freight, on the other hand, seems to recognize the lock-in effect of the separate seniority rosters. This defendant states in its response to plaintiff's motion that without a court order it cannot apply its transfer limitations to whites only "nor can the Company or Union grant any transferring blacks carryover seniority *without which they will not risk the transfer.*" (Emphasis added.)

that these transfers have included transfers into the road driver position. No justification for lack of specific evidence, pursuant to Rule 56(f), Fed.R. Civ.P., has been submitted.

The court finds these allegations insufficient to raise a question of material fact. Rule 56(e) provides, in pertinent part:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, *must set forth specific facts showing that there is a genuine issue for trial.* If he does not so respond, summary judgment, if appropriate, shall be entered against him. (Emphasis added.)

See Scarboro v. Universal C.I.T. Credit Corp., 364 F.2d 10, 15 (5th Cir. 1966). The burden on the party opposing summary judgment was emphasized by the Fifth Circuit in Bruce Construction Corp. v. United States, 242 F.2d 873, 875 (5th Cir. 1957):

> [W]hen a movant makes out a convincing showing that genuine issues of fact are lacking, we require that the adversary adequately demonstrate by receivable facts that a real, not formal, controversy exists, and, of course, he does not do that by mere denial or holding back evidence.

While the papers supporting the movant's position are closely scrutinized and the opposing papers are indulgently treated, if the party opposing summary judgment does not disclose the merits of his case or defense nor explain, pursuant to Rule 56(f), why he cannot present by affidavit facts essential to justify his opposition, he is no longer entitled to the rule liberally construing the pleadings in his favor. 6 Moore, Federal Practice, ¶ 56.22 [2] at 2822 (1972). In Cunningham v. Securities Investment Co., 278 F.2d 600, 603 (5th Cir. 1960), the Fifth Circuit quoted from ¶ 56.23 of Moore's treatise to the effect that the court will not look with indulgence upon a party who has presented neither evidentiary materials in opposition nor any reason for his failure to do so. It supplied emphasis to Moore's conclusion that "it is certainly well settled that the opposing party is not entitled to hold back his evidence until trial on the possibility that an issue of material fact might arise if the case were to go to trial on the merits." Accordingly, the court will not deny this motion for partial summary judgment on the mere assertion that the Unions would present at trial evidence of numerous transfers despite the seniority rules in effect.

In Quarles v. Philip Morris, Inc., 279 F.Supp. 505 (E.D.Va.1968), plaintiffs brought an action against an employer, local union and the president of the union to enjoin alleged violations of Title VII. The employees represented by the union had been assigned to one of four separate departments. These departments had in the past been segregated on the basis of race. Each department had its own separate seniority roster. Although interdepartmental transfers were prohibited for many years, the bargaining agreements had for several years prior to the action included a limited opportunity to transfer. The method of transfer required the employee to sacrifice his employment seniority and take new departmental seniority based on his transfer date. The court found that most of the opportunities for exercising privileges within the company, including securing preferential day shifts and avoiding layoffs, depended upon departmental seniority.

After a careful review of the legislative history of various sections of Title VII, with particular emphasis on the legislative history of § 703(h), 42 U.S.C. § 2000e-2(h), the court found that the defendants had intentionally engaged in unlawful employment practices on the ground of race against the plaintiff and other blacks similarly situated. The court stated that its decree would provide that all members of the class, Ne-

gro employees in the prefabrication department hired by the company before January 1, 1966, be given an opportunity to transfer to other departments if they elected to transfer and if they were qualified for the employment they sought. Such transferees would have departmental seniority computed from their employment seniority.

While in the action *sub judice* the collective bargaining agreements are silent on transfer, the *Quarles* case is not so easily distinguished. That court emphasized that "[d]epartmental seniority rooted in decades of racially segregated departments can neither mask the duty of a union to fairly represent its members nor shield the employer who is privy to the union's derelictions." *Id.* at 518. Further, the Fifth Circuit has found that "[i]n any industry loss of seniority is a critical inhibition to transfer." United States v. Jacksonville Terminal, *supra*, 451 F.2d at 453.

■ This court need not decide whether in the instant case the seniority rules, standing alone, violate Title VII. Here an employee is flatly denied the opportunity to transfer into the road driver job classification unless he resigns and moves to a different terminal. On doing so he loses all accumulated seniority for job bidding, shift preference and layoff avoidance. The combination of the no-transfer rule and loss of seniority upon "transfer", i. e., resignation, removal to a different terminal and rehiring, is not insignificant. The court finds that the combination here operates to freeze the status quo of prior discrimination.

■ The Unions, however, argued that the seniority system, as presently operated, are business necessities. They state in their brief in opposition to this motion for partial summary judgment that they are prepared to submit substantial evidence of business necessity, and refer the court to the affidavit of W. C. Smith. For the reasons mentioned above, the court is not impressed by assertions as to unspecified evidence to be submitted at trial. The court will consider the alleged business justifications set forth in the affidavits and those which are specified in the briefs. It should be noted that the arguments that are addressed to avoiding merger of the bargaining units on the grounds of business necessity are irrelevant to the relief requested in this motion. Plaintiff presently seeks an opportunity for the class to transfer with retained seniority, not a total reformation of the seniority system in effect.

Specifically the Unions contend that the seniority system is justified on the ground that such patterns are sanctioned by the National Labor Relations Board and that they developed as an almost universal pattern of organization. In his affidavit, W. C. Smith stresses that the bargaining units are covered by separate contracts. Robert L. Mitchell, attorney for Local 728, maintains that the separate units were established by the defendant unions "in good faith reliance" upon NLRB decisions, rules, regulations and criteria. The Unions also seek to justify the separate bargaining agreements on the grounds of employee preference; they state that merger of the separate seniority rosters would cause "a virtual revolution" among employees. Finally, they assert that the employer's need for operating efficiency mandates separate seniority rosters because of: (a) Department of Transportation regulations which make interchange of employees between classifications impracticable; (b) the city driver's function as driver-salesman and the absolute necessity of his knowing both his routes and his clients; and (c) the loss of job security implicit in merger of seniority rosters which would "destroy employee morale and naturally result in greatly reduced production."

Whether the above grounds amount to business justifications of the seniority rules, together with the no-transfer rule, is extremely important, for "[w]hen a policy is demonstrated to have discriminatory effects, it can be justified only by a showing that it is necessary to the

safe and efficient operation of the business." Jones v. Lee Way Motor Freight Co., *supra,* 431 F.2d at 249. The Fifth Circuit has indicated that not all so-called business justifications suffice to justify the perpetuation of prior racial discrimination. In Local 189, etc. v. United States, *supra,* 416 F.2d at 989, it stated:

When an employer or union has discriminated in the past and when its present policies renew or exaggerate discriminatory effects, those policies must yield, unless there is an overriding legitimate, non-racial business purpose.

In United States v. Jacksonville Terminal Co., *supra,* 451 F.2d at 451, the Fifth Circuit stated that the defendant "was required to prove not only that the seniority systems and restrictions promote safe and efficient operation but also that they are essential to these goals." The court there quoted from United States v. Bethlehem Steel Corp., 446 F.2d 652, 662 (2d Cir. 1971), a quotation that is equally appropriate here:

[T]he 'business necessity' doctrine must mean more than that transfer and seniority policies serve legitimate management functions. Otherwise, all but the most blatantly discriminatory plans would be excused even if they perpetuated the effects of past discrimination. . . . Necessity connotes an irresistable demand. To be preserved, the seniority and transfer system must not only directly foster safety and efficiency of a plant, but also must be essential to those goals. . . . If the legitimate ends of safety and efficiency can be served by a reasonably available alternative system with less discriminatory effects, then the present policies may not be continued.

The Unions' assertion that the separate bargaining agreement have been sanctioned by the N.L.R.B. is not a sufficient business justification which would prohibit the opportunity to transfer to members of the class who have been discriminated against on the basis of race. The effect of bargaining agreements in Title VII actions such as the action *sub judice* was discussed United States v. Jacksonville Terminal Co., *supra,* 451 F.2d at 454, 455:

That hoary collective bargaining agreements now mandate perpetuation of past aberrations from the governmental policy does not affect the propriety of judicial action. . . . Such agreements do not, *per se,* carry the authoritative imprimatur and moral force of sacred scripture, or even of mundane legislation. . . .

When the current effects of past—and sometimes present—racial discrimination in entities subject to the National Labor Relations Act have come to our attention, this Court has unhesitatingly required affirmative remedial relief. (Citations omitted.)

Further, because the court has not been asked to merge the seniority rosters, or to consolidate the bargaining units, W. C. Smith's emphasis of the fact that the units are covered by separate contracts is inapposite. The argument that the separate units were established "in good faith reliance" upon N.L.R.B. decisions, rules and regulations also cannot be found to be an overriding, legitimate, nonracial business purpose. As did the court in Local 189, etc. v. United States, *supra,* 416 F.2d at 995, the court finds "unpersuasive the argument that, whatever its operational effects, job seniority is immune under the statute because not imposed with *intent* to discriminate." When the discriminatory employment practice is not accidental, it is not a "bona fide" seniority system excluded from the strictures of Title VII pursuant to § 703(h), 42 U.S.C. § 2000e–2(h). *Id.*; Quarles v. Philip Morris, Inc., *supra.*

Clearly, employee preference for maintenance of a seniority system which perpetuates past discrimination does not begin to amount to an overriding, legitimate, nonracial business purpose. Engrafting majority rule onto Title VII as

a barrier to remedial action by the courts would frustrate the clear objective of Congress. A legitimate *business* necessity is the one and only justification for the maintenance of an employment practice which perpetuates prior discrimination. Rowe v. General Motors Corp., *supra*, 457 F.2d at 354.

The Unions assert that the employer's need for operating efficiency mandates separate seniority rosters. Insofar as this is an argument against merger of the bargaining units, it is irrelevant to the relief sought in plaintiff's motion for partial summary judgment. If it is an argument against permitting qualified members of the class an opportunity to transfer to the formerly inaccessible road driver position, the court notes that the employer in the instant case has stated that it "stands ready to permit such minority employees as the Court may direct to indicate their desire for a road driver's job, to transfer to the next available road driver opening and to transfer any seniority date the Court may prescribe." The employer has stressed the need for a court order before he can allow only the class members an opportunity to seek transfer. The Supreme Court has recognized that employers may be enjoined from carrying out provisions of a discriminatory bargaining agreement. Colorado Anti-Discrimination Comm'n v. Continental Air Lines, Inc., 372 U.S. 714, 724, 83 S.Ct. 1022, 10 L.Ed.2d 84 (1963).

Two of the reasons which the Unions set forth as grounds for their contention that the employer's operating needs require the present seniority system—the Department of Transportation regulations and the functions and skills of the city drivers—have been dealt with and fund to be inadequate as business justifications. See Part III, *supra*. The third ground, loss of job security implicit in merger of seniority rosters and the destruction of employee morale, is not addressed to the requested relief of an opportunity to transfer without 'oss of seniority. Further, it is not such a

business justification as would bar this court from ordering remedial action. In Bing v. Roadway Express, Inc., *supra*, 444 F.2d at 690–691, the Fifth Circuit considered the contention that transfers could cause some personnel problems and acknowledged that the employees whose interests were adversely affected would almost certainly be displeased. It found, however, that this possible effect of permitting transfers should not be accorded greater weight than the plaintiff's rights under Title VII. See also, Jones v. Lee Way Motor Freight, Inc., *supra*, 431 F.2d at 250.

The Unions strenuously argue that relief to the class would discriminate against white employees. They state that "[m]embers of the class are under such circumstances awarded fictional seniority based solely upon their class membership, which in turn is based solely upon their race. The logical result of such a remedy is to give preference to such individuals solely because of their race, and similarly to penalize white road drivers solely because of their race." This contention is without merit. The Fifth Circuit in Local 189, etc. v. United States, *supra*, distinguished between the creation of fictional seniority for newly hired personnel from recognition of seniority of class members who had actually worked for the employer in a different job classification. In the same decision it stressed "Title VII's imposition of an affirmative duty on employers to undo past discrimination." 416 F.2d at 995. In United States v. Jacksonville Terminal Co., *supra*, 451 F.2d at 455, the court emphasized that it had unhesitatingly required affirmative remedial action as to the current effects of past or present racial discrimination even though "such relief often proves detrimental to whites' competitive seniority status . . . ." Finally, in Quarles v. Philip Morris, Inc., *supra*, 279 F. Supp. at 520, the court stated that "[t]he departmental seniority rights of white employees in the [formerly segregated department] are not vested, inde-

feasible rights. They are expectancies derived from the collective bargaining agreement, and subject to modification."

Thus, the court finds that the continued use of the seniority system to inhibit members of the class from seeking an opportunity to transfer into the road driver position is neither bona fide nor required by a business necessity. Further, the court finds that the defendants' maintenance of a separate seniority list for road drivers, together with defendant Yellow Freight's policy of prohibiting transfer into the road driver position by employees in other job classifications serves to perpetuate past discrimination in violation of Title VII and 42 U.S.C. § 1981.

## V. PLAINTIFF SAGERS' INDIVIDUAL CLAIM OF DISCRIMINATION

The motion for partial summary judgment seeks a two-fold ruling on plaintiff Sagers' individual claim of discrimination. Plaintiff moves the court to rule that the defendants' transfer and seniority policies violated his rights, and that defendants discriminatorily denied plaintiff an opportunity to transfer on the same basis as other persons, on the basis of race, in ways that have adversely affected his employment status.

There is no dispute concerning the background of plaintiff's employment with Yellow Freight. He was employed on March 4, 1955, by the Watson-Wilson Transportation System, a predecessor corporation to the defendant Yellow Freight.[13] At that time he was employed as a dockman and, starting the following year, was employed as a city driver.[14] In 1969 the plaintiff sought a transfer to a road driver position and was notified of an opening in early November, 1969. He made several requests to company officials to grant him a leave of absence with "retreat rights" so that he might try out the road driver position without automatic loss of fourteen years accumulated seniority. However, he was informed that he would have to resign if he wished to take the road driver position. The plaintiff submitted a resignation, dated November 8, 1969, and served as a road driver for Yellow Freight for approximately 10 days. The plaintiff resigned from the road driver position for reasons of health[15] on November 16, 1969, and was re-employed as a dockman on the same date. After his re-employment Sagers' seniority date for purposes of bidding and layoff was set at the date of re-employment with no credit given to the fourteen years of work within the bargaining unit. Further, at least six white employees had been granted leaves of absence for various reasons. At least one of these was given to a white employee to try out the road driver position prior to resigning. Yellow Freight admits that prior to the instigation of this action plaintiff Sagers was the only black person employed, albeit temporarily, as a road driver in the Southern Conference area.

Yellow Freight states that if the court finds that Sagers is entitled to special treatment due ot any racial discrimination in the past, it "will not oppose splitting up the back pay award with the Union." It has no objections to the restoration of the original 1955 seniority date. Yellow Freight has emphasized that Sagers was moved to the bottom of the seniority roster at the Local 728's request; in answer to plaintiff's request for admissions, Yellow Freight indicated that at the request of Local 728 Business Agent Wayne Shepherd, Sagers'

---

13. Yellow Freight acquired the Watson-Wilson Transportation System in 1965 and for about three years operated it under that name.

14. As stated above, dockmen, checkers and city drivers are in the same bargaining unit.

15. Although the local union "insists upon strict proof of this fact," not even a scintilla of evidence has been introduced to cast the reason for resigning into doubt. The employer does not question that the plaintiff resigned the road driver position for reasons of health.

name was moved down on the seniority roster pursuant to the requirements of the collective bargaining contract.

The Unions defer to the positions of Yellow Freight and Local 728 as to plaintiff's individual claims, stating that there is no contention or suggestion that they were involved in events leading up to the denial to plaintiff of "retreat rights" or in the handling of the grievance thereafter.

Local 728 opposes relief to the individual plaintiff mainly on the ground that plaintiff did not request aid in obtaining a leave from Local 728, and transferred to the road driver position without the knowledge of the local union. For reasons stated above, the court is not convinced that partial summary judgment is automatically precluded by the string of denials (not supported by affidavit or other evidence), which is found in the local's brief in opposition to the motion for partial summary judgment.

Plaintiff Sagers was clearly injured by the class-wide discrimination in hiring that existed in the past. When he was originally hired by Yellow Freight's predecessor, the statistics leave no doubt that he could not enter the road driver category. Further, it is clear that resistance to the hiring of black road drivers by local branch managers continued well after Sagers was hired. This court has found that the no-transfer rule, combined with the loss of seniority upon resignation and re-employment at a different terminal, serve to perpetuate the effects of this past discrimination and, thus, constitute an unfair labor practice in violation of Title VII and 42 U.S.C. § 1981. The individual plaintiff has never been afforded the opportunity to transfer without loss of seniority for bidding and lay-off purposes. The fact that he was permitted to transfer to the road driver position on the condition that he resign and lose his seniority is not a sufficient reason to preclude an opportunity to transfer on the same basis as other members of the class who were discriminated against. i. e., an opportunity to transfer without loss of seniority. Title VII imposes an affirmative duty on employers, to undo past discrimination, Local 189, etc. v. United States, *supra;* the court finds that permission to transfer only with change in location and loss of seniority is an insufficient discharge of that affirmative duty.

However, the designation of the individual plaintiff's proper seniority date depends on whether he suffered individual discrimination in the unequal application of the transfer and seniority rules, that is, whether he was denied a leave of absence on the basis of race. The plaintiff not only resigned and transferred to the road driver position, but he also resigned from the road driver position and transferred back to the bargaining unit for city drivers, checkers and dockmen. There are no allegations of past discrimination in the hiring of city drivers, checkers or dockmen. Thus, there are no allegations of a discriminatory lock-in effect of the no-transfer and seniority rules as applied to employees who were employed into other job classifications. Nevertheless, there is no doubt that had the plaintiff been granted a leave of absence, his return to his original bargaining unit would not have resulted in a loss of seniority.

The plaintiff stresses defendant Yellow Freight's admission that he was the only black to request a leave of absence and that the request was denied. This defendant also admits that six white employees were granted leaves of absence with retreat rights. Of these, the leave granted to E. A. Florence was given in order that he might have a trial period in the road driver category. Yellow Freight has been unable to come forward with any explanation which would distinguish the Florence request from that of Sagers. Further, the deposition of William L. Swain, who has occupied a managerial position for Yellow Freight (and its predecessor Watson-Wilson) for a number of years, indicates that some employees seeking leaves of absence made the initial request to the employer, which typed up and signed the request and sent it over to Local 728 for signa-

ture. See, Exhibits A–4 and A–6 to plaintiff's request for admissions. Thus, it cannot be said that Sagers, in making his request from the company official, followed such an unusual course of action that he should be barred from relief.

■ The reason for Local 728's emphasis on the fact that Sagers did not request aid from the local union before transferring is not clear. If the defendant is seeking to set up a defense of failure to exhaust contractual remedies, it should be pointed out that when a plaintiff is asserting a statutory right against racial discrimination, he need only follow the procedures for relief provided in the statute. King v. Georgia Power Co., *supra*, 295 F.Supp. at 949. The plaintiff clearly alleges that the denial of the leave of absence stemmed from racial discrimination. Although he subsequently did file a grievance with the union, he is not barred by that action from seeking relief in the federal courts. Hutchings v. United States Indus., Inc., *supra*. If, on the other hand, Local 728 is seeking to deny its own involvement as a defense to the plaintiff's individual claim, the court cannot agree with a contention of noninvolvement. The plaintiff's loss of seniority resulted from a request by Wayne Shepherd, an official of Local 728. The request was apparently made as a result of the collective bargaining agreement, to which Local 728 was a party, which required loss of seniority for bidding and layoff purposes upon transfer to a different bargaining unit. Yellow Freight has indicated that it is not interested in the plaintiff's seniority status and that it has no objection to restoration of the 1955 seniority date. Local 728, in contrast, is vigorously opposing recognition of the plaintiff's prior years of service before the temporary transfer out of the bargaining unit. Further, Local 728's involvement is shown by the fact that it agreed to a policy whereby a leave of absence would be given only upon the signature of the request by both the employer and the local union.

The employer denied the plaintiff's request. The local union signature would have been useless under the above agreement.

■ However, the court is not convinced that the plaintiff has satisfied the heavy burden under Rule 56 to support summary judgment on the claim of individual racial discrimination. The court cannot find at this time that the plaintiff was, as he puts it, "deprived of a fundamental benefit of employment status which was routinely available to white employees." The representative of defendant Yellow Freight whose deposition was taken could not amplify the facts shown by the copies of some of the requests for a leave of absence as they were allegedly granted without involvement of the deponent. The record before the court presently clearly establishes that one white employee, E. A. Florence, was granted and one white employee, James Braswell, was denied a leave of absence clearly similar to that requested by the plaintiff. The other letters granting leaves of absence are not sufficient on their face to convince the court that the requests therein can only be characterized as similar to the plaintiff's request. Thus, the court cannot hold, as a matter of law, that race was the basis for the denial of the plaintiff's request for a leave of absence. The court must withhold summary judgment on this claim.

It is not clear from the parties' briefs whether the claim of a breach of the local's duty of fair representation is before the court. Since the facts as to this claim are not entirely clear and since the issue has not been fully briefed, disposition of this issue by summary judgment is not appropriate.

## VI.  RELIEF

■ The individual plaintiff's failure to establish his claim for individual damages and injunctive relief does not bar relief for the class he represents. Parham v. Southwestern Bell Telephone Co., *supra*, 433 F.2d at 421. See also,

Hutchings v. United States Indus., Inc., *supra*, 428 F.2d at 311. On the basis of the findings and conclusions as specified in this order, the court holds that the class, and plaintiff as a member of the class, are entitled to appropriate relief from the defendants' unlawful practices and their effects, including modification of the no-transfer rule and applicable seniority provisions.

Yellow Freight contends that because racial discrimination in the hiring of road drivers ceased before the filing of this action, no injunction or other form of court-imposed quota or reporting requirement would be appropriate in this case.[16] In reply, the plaintiff sets out a number of reasons to support his contention that the court should grant injunctive relief and require defendant Yellow Freight to submit periodic reports to allow monitoring of its compliance with the law and the remedies specified by the court.

The court, however, agrees with plaintiff's original posture concerning specification of relief as is found in his brief in support of the motion for summary judgment. Therein plaintiff asserted that a precise specification of the terms of remedial measures is not appropriate for summary disposition. He stated that "[t]he technical details of a remedy complying with the broad outlines of the judicial decision . . . should be reserved for possible agreement by the parties, or, failing that, further simplified proceedings. In that manner, the parties' detailed knowledge of the operational facts and the court's authoritative ruling of law may both be utilized effectively." The court's decision to delay the specification of the details is necessary, furthermore, in that the length of discrimination in hiring has not been determined in this order. Clarification of the facts as to that issue is desired by the court before specification of the details of the appropriate relief to the class.

## VII. DEFENDANT YELLOW FREIGHT'S MOTION FOR SUMMARY JUDGMENT

At the end of its response to plaintiff's motion for partial summary judgment defendant Yellow Freight moves the court to enter summary judgment finding no racial discrimination, either as to the individual plaintiff or as to the class which he represents. In the alternative, this defendant urges the court to find that any discrimination that existed prior to July 1, 1968, ended at that time and to direct a thirty-day opener similar to the remedy directed in United States v. Central Motor Lines, Inc., 338 F.Supp. 532 (W.D.N.C.1971) for members of the class who were employed prior to July, 1968.

In light of the undisputed statistics concerning Yellow Freight's hiring and the court's findings hereinabove as to the effect of the no-transfer rule and separate seniority lists, it is clear that this defendant has not shown that it is entitled to summary judgment as a matter of law. Further, since Yellow Freight incorrectly relies on national statistics in support of its contention that racial discrimination, if any, ended prior to July 1, 1968, and since this court has determined that the details of the appropriate relief should be reserved for agreement by the parties or further proceedings, the court does not direct at this time a remedy similar to that found in United States v. Central Motor Lines, Inc., *supra*.

Accordingly, defendant Yellow Freight's motion for summary judgment is denied.

---

16. Yellow Freight's contention seems somewhat inconsistent with its conclusions that it "cannot apply its transfer limitations to whites only in the absence of a court order without violating racial discrimination prohibitions . . . ." and that the remedy applied in the case of United States v. Central Motor, 338 F.Supp. 532 (W.D.N.C.1971) would be appropriate if the court found racial discrimination.

## CONCLUSION

In sum, the plaintiff's motion for partial summary judgment is granted in part, denied in part; defendant Yellow Freight's motion for summary judgment is denied. Further, on the basis of the facts as set out herein, the court has found that:

(1) the court has jurisdiction over this case under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. in that the complaint filed with the Equal Employment Opportunity Commission was timely and not too limited in scope to support the instant action. Jurisdiction is also found to exist under 42 U.S.C. § 1981;

(2) defendant Yellow Freight has in the past excluded black persons from the position of road driver and has limited black employees to positions other than that of road driver on the basis of race;

(3) the defendants' maintenance of a separate seniority list for road drivers, together with defendant Yellow Freight's policy of prohibiting transfer into the road driver position by employees in other job classifications, serves to perpetuate past discrimination in hiring and violates Title VII and 42 U.S.C. § 1981;

(4) the plaintiff and the class which he represents are entitled to appropriate relief from the defendants' unlawful practices and their effects, including modification of the no-transfer rule and applicable seniority provisions.

Left for determination in future proceedings are: the question of the length of defendant Yellow Freight's discrimination in hiring; the claim of a breach of the duty of fair representation by Local 728; and the issue of whether the individual plaintiff was denied a leave of absence on the basis of race. The details of the appropriate relief for the class is reserved for possible agreement by the parties or, failing that, further proceedings. As plaintiff's individual claim has not been resolved by this order, the nature of the relief, if any, on the individual claim is yet to be determined.

It is so ordered.