**DISKMAKERS, INC., Appellant,**

v.

**DeWITT EQUIPMENT CORPORATION,
Jack Rosenfeld, Counterclaimant.**

**No. 76–1955.**

United States Court of Appeals,
Third Circuit.

Argued March 28, 1977.

Decided May 18, 1977.

Miles Warner, Philadelphia, Pa., for appellant; Warner & Huntington, Philadelphia, Pa., of counsel.

Law Offices of Brian R. Hersh, Miami, Fla., Kleimer, Juman & Juman, Edison, N. J., for appellee.

Before ADAMS, ROSENN and WEIS, Circuit Judges.

## OPINION OF THE COURT

WEIS, Circuit Judge.

A seller's precipitous decision to declare a breach of contract and the district court's premature entry of judgment in agreement with the seller's position underlie this appeal. Because the legality of its stance is uncertain, the seller may have been hasty in its action and, hence, the district court was likewise in granting summary judgment. Accordingly, we will vacate and remand for a more complete development of the facts.

In a shortage market where transactions are negotiated by brokers acting at long distances from both the ultimate customers and suppliers, doubts as to the broker's ability or willingness to deliver the promised goods can warp a transaction. A general shortage of polyvinyl chloride caused plaintiff Diskmakers, a manufacturer of phonograph records, to enter such a market. In February of 1974, a group of brokers of-

fered plaintiff a contract for the purchase of two million pounds of this plastic in the form of regrind material, a granular, hard substance made from record-making scraps. As its name implies, regrind material may be reused, but it is important that the material be free from contamination.

In addition to specifying quality, the contract stated that:

"[N]ot later than the end of the fifth business day following delivery to Buyer of this contract fully executed, Buyer shall deposit with Seller a letter of credit drawn by a reputable commercial United States bank for $760,000.00 in such form as will secure the purchase price to Seller."

Paragraph Five of the contract read:

"If Buyer shall fail to comply with the terms of Paragraph 4 [describing the letter of credit], it shall pay Seller $10,-000.00 as liquidated damages for such failure in lieu of any and all other damages . . . ."

At the time the brokers sent the contract to plaintiff, it had not yet learned the identity of the seller, DeWitt Equipment Corporation. Only after the agreement was returned did plaintiff speak directly to Burt DeWitt, defendant's president. In this initial conversation, some doubt arose as to whether the material would satisfy the contract's specifications.

During the ensuing five days, several developments both complicated the contract and cast a cloud over its performance. DeWitt and representatives of Diskmakers had several telephone conversations concerning the quality and quantity of the material being furnished, as well as the economies of shipping in truckload lots. Although the exact content of these conversations is in dispute, DeWitt apparently agreed to make inquiries of his supplier (who in turn acted as a broker for another) and "get back" to the buyer. In the buyer's version, these conversations did little to allay its doubts and much to increase them

since DeWitt asked to be released from his obligations under the contract.

Soon thereafter, Diskmakers assigned the contract to Dixie Pressing, Inc., a large record making concern in Tennessee.[1] In concert with Dixie and its bank, plaintiff decided to provide a revocable letter of credit. The terms of the letter required a signed statement by seller that, *inter alia* : (1) the product had been available for inspection and testing in New Jersey; (2) Dixie was in default on payment; and (3) Dixie failed to accept delivery within four days after receipt of notice. These terms were not in the original contract.

The letter was apparently issued on March 7, 1974 and transmitted to DeWitt within a few days. Upon receipt of the document, DeWitt declared that the plaintiffs had breached the contract and demanded payment of the liquidated damages. It then brought suit in state court.

The buyer filed a complaint in the United States District Court for New Jersey alleging breach of contract. The defendant counterclaimed for the lost profits occasioned by the plaintiff's breach and for liquidated damages. After a period of initial skirmishing, defendant moved for summary judgment. The district court, relying on the Uniform Commercial Code, interpreted the contract as requiring an irrevocable letter of credit, in view of the absence of any contrary indication. Since the plaintiff had failed to comply with that condition, the court entered judgment for the defendant on the plaintiff's complaint and for the defendant on its counterclaim for $10,000.

■ We agree with the district judge's conclusion that when the contract spoke of a "letter of credit" without designating it as revocable, the language must be construed as requiring an irrevocable instrument. The parties do not dispute the applicability of the Uniform Commercial Code which has been enacted in New Jersey.[2]

---

1. The contract was subsequently reassigned to plaintiff.

2. The parties have not extensively argued the issue of choice of law and the district court assumed that New Jersey law applied. The

N.J.S.A. 12A:2–325(3) states: "Unless otherwise agreed the term 'letter of credit' . . . in a contract for sale means an irrevocable credit issued by a financing agency of good repute . . .." According to the comment to this subsection, the buyer obligated to provide a letter of credit must procure an irrevocable letter of credit unless the contract specifies otherwise.[3]

■ Plaintiff does not seriously question this position but argues that its serious doubts about whether the defendant could or would perform prompted the decision to deliver a revocable letter of credit. The district court treated the delivery of an irrevocable letter of credit as a "condition precedent" to the defendant's compliance with the contract, and, thus, it concluded DeWitt had a clear right to terminate the agreement. The court recognized that the disputes over the conversations could not properly be resolved on motion, but believed they did not include material facts which would influence the result. We think that this analysis fails to give due consideration to the doctrines of anticipatory breach and the right to adequate assurance of performance. The district court did not give the plaintiff the benefit of all favorable factual inferences which would have invoked these defenses and, therefore, judgment was premature.

The plaintiff contends that its conversation with the defendant reasonably led it to doubt that the specified material could be provided in the required quantities. It therefore invokes Uniform Commercial Code Sections 2–609 and 610 as justification for its apparent breach.

N.J.S.A. 12A:2–609(1) reads:

"A contract for sale imposes an obligation on each party that the other's expectation of receiving due performance will not be impaired. When reasonable grounds for insecurity arise with respect to the performance of either party the other may in writing demand adequate assurance of due performance and until he receives such assurance may if commercially reasonable suspend any performance . . .."

If the plaintiff was entitled to assurance of performance, it may have been permitted to suspend its performance, i. e., furnishing an irrevocable letter of credit. The plaintiff contends that if it were legally entitled to withhold delivery of an irrevocable letter, its conduct in supplying a revocable one cannot be termed a breach. It defends its course of action as an effort to avoid payment for nonconforming goods, an eventuality it had come to fear as a result of the defendant's conversations. The reasonableness of such an action is largely a question of fact and in this case could not be resolved on summary judgment.

The New Jersey Study Comment on Section 2–609 states:

"As between merchants, the test for determining when reasonable grounds for insecurity arise and what will constitute an adequate assurance of future performance is a commercial criterion. Any facts which should indicate to a reasonable merchant that the promised performance might not be forthcoming when due should be considered reasonable grounds for insecurity . . .."

N.J.S.A. 12A:2–609, New Jersey Study Comment. *See also* 2 R. Anderson, Uni-

---

defendant is a New York corporation with offices in Florida and the plaintiff is a Pennsylvania corporation. The contract was apparently entered in New York City, but was to be performed in New Jersey. The federal court in New Jersey was obligated to use New Jersey's choice of law rule which is apparently that contracts are governed by the law of the place of performance in case of breach. *See Packard Englewood Motors, Inc. v. Packard Motor Car Co.*, 215 F.2d 503 (3d Cir., 1954). Moreover, both Florida and New York have adopted the U.C.C.

**3.** New Jersey law governing letters of credit was explored in *National Surety Corporation v. The Midland Bank*, 551 F.2d 21 (3d Cir., 1977). In *Chase Manhattan Bank v. Equibank*, 550 F.2d 882 (3d Cir., 1977), this court quoted a characterization of such documents: "The engagement is that if certain things are done, either by way of presentation of pieces of paper or simply by the making of a demand for payment of a draft or acceptance, payment or acceptance will take place." 550 F.2d at 885.

form Commercial Code (2d Ed.) 2–609:6. Further, the comment compares the U.C.C. section with the Restatement of Contracts, § 280, which states that a change in position following expressions of inability to perform operates as an excuse of condition, since where one party expresses doubt, "the risk of failure of consideration is wrongfully imposed [upon the innocent party] and unless retracted discharges the other [innocent] party." Further factual development may aid in determining whether Diskmakers was reasonable in demanding assurances, or whether DeWitt complied with its request in an acceptable fashion. In addition, the trial judge ought to determine whether, under the circumstances here, furnishing a revocable letter was the equivalent of suspension of performance.

The New Jersey Study Comment notes that the demand "must apparently be made in writing." Our research and that of counsel has unearthed no New Jersey cases discussing this requirement. However, the Court of Appeals for the Seventh Circuit determined that actual notice, coupled with a promise to correct the deficiency, excused the failure to submit a written demand. *AMF, Inc. v. McDonald's Corp.*, 536 F.2d 1167 (7th Cir. 1976). See also *Kunian v. Development Corporation of America*, 165 Conn. 300, 334 A.2d 427 (1973). Moreover, it is arguable that the condition set out in the revocable letter of credit, i. e., the opportunity to inspect the goods before delivery satisfied the requirement of a written demand for reassurance. *Pittsburgh-Des Moines Steel Co. v. Brookhaven Manor Water Co.*, 532 F.2d 572 (7th Cir. 1976). The district court may find it necessary to address this issue after a full development of the facts and we do not pass upon it on the incomplete record before us.

■ The question of anticipatory repudiation may also be a factor in this case. N.J.S.A. 12A:2–610 reads:

"When either party repudiates the contract with respect to a performance not yet due the loss of which will substantially impair the value of the contract to the other, the aggrieved party may

> (a) for a commercially reasonable time await performance by the repudiating party;

> \*      \*      \*      \*      \*      \*

> (c) . . . suspend his own performance . . .."

If DeWitt's statement were found to be an unequivocal declaration that the defendant would not fulfill the agreement, it may be that the plaintiff was entitled to suspend its performance until the defendant revoked its previous pronouncement or began to comply with the contract. In *Ross Systems v. Linden Dari-Delite, Inc.*, 35 N.J. 329, 173 A.2d 258, 264–265 (1961), the court said:

> "An anticipatory breach is a definite and unconditional declaration by a party to an executory contract—through word or conduct—that he will not or cannot render the agreed upon performance. . . If the breach is material, i. e., goes to the essence of the contract, the nonbreaching party may treat the contract as terminated and refuse to render continued performance."

See also R. Anderson, *supra*, § 2–610:8.

The facts which may be drawn from the limited record here do not establish that the failure of the plaintiff to furnish an irrevocable letter of credit was a condition precedent independent of the obligation of the defendant to perform its part of the agreement. Accordingly, the district court erred in failing to consider the defenses tendered by the plaintiff.[4]

The judgment of the district court will be vacated and the case will be remanded for further proceedings consistent with this opinion.

---

4. We do not catalogue the many variables which a complete resolution of the facts may reveal because we cannot anticipate all of the issues which may be presented. We have noted only some of the obvious problems which were removed from consideration by the entry of summary judgment.