**In the Matter of BORNE CHEMICAL COMPANY, INC., a corporation of the State of New Jersey, Debtor.**

**BORNE CHEMICAL COMPANY, INC., a corporation of the State of New Jersey, Plaintiff,**

v.

**LINCOLN FIRST COMMERCIAL CORPORATION, Defendant.**

**Bankruptcy No. 80–0203.**

United States Bankruptcy Court, D. New Jersey.

Feb. 23, 1981.

Crummy, Del Deo, Dolan & Purcell by Frank J. Vecchione, and Ravin, Katchen & Greenberg by William S. Katchen, Newark, N. J., co-attys. for debtor-in-possession.

Kleinberg, Moroney, Masterson & Schachter, by Robert S. Molnar, Millburn, N. J., and Hahn, Hessen, Margolis & Ryan, by Michael S. Landes and Gilbert Backenroth, New York City, co-attys. for Lincoln First Commercial Corp.

## OPINION

D. JOSEPH DeVITO, Bankruptcy Judge.

Borne Chemical Company, Inc., the debtor and plaintiff in the above captioned complaint, seeks a declaration of its rights under the financing agreement dated February 29, 1980, which it entered into with the lender and defendant, Lincoln First Commercial Corporation, pursuant to this Court's financing Order dated February 27, 1980. Specifically, Borne seeks a declaratory judgment determining that cross-collateralization of an antecedent mortgage indebtedness was not within the contemplation of subject financing agreement. Alternatively, plaintiff argues that even were this Court to find that cross-collateralization was provided for in the Order approving the financing agreement, such cross-collateralization, coupled with the status of a superpriority administration expense (§ 364[c][1] of the Bankruptcy Code), would be unenforceable. Plaintiff further seeks specific performance, compelling defendant's continued financing to the extent of 80 per cent of the debtor's eligible accounts receivable, which plaintiff alleges to be necessary if the plan of reorganization is to be confirmed. Lincoln moves for summary judgment dismissing debtor's complaint for declaratory judgment.

The relevant history in the tangled relationship between the above named creditor and debtor, resulting in the present controversy, is largely undisputed and may be summarized as follows:

1. On or about June 14, 1978 plaintiff, Borne Chemical Company, entered into a series of loan agreements with the defendant, Lincoln First Commercial Corporation. In accordance with the financing agree-

ment and the supplemental agreement, each dated June 14, 1978, Borne obtained an accounts receivable financing loan limited to $1,000,000.00. To secure the loan, Borne gave Lincoln a security interest in all its accounts receivable, general intangibles, inventory, and other collateral specifically set forth in the respective agreements. It appears that the said security interests were duly perfected. A further loan by Lincoln to Borne in the sum of $750,000.00, as evidenced by a mortgage note in that amount, also dated June 14, 1978, was secured by a mortgage lien on certain real property of the debtor, to wit, a petroleum blending and processing facility located in Elizabeth, New Jersey.

2. By its terms, the aforesaid mortgage note required the debtor to make regular monthly payments of $4,166.67, with the final payment of $504,166.47 payable on May 1, 1983.

3. The debtor's Chapter 11 petition was filed on February 15, 1980. As of that date, it appears that the total indebtedness of Borne to Lincoln was between $1.5 million and $1.6 million. The affidavit of William E. McConnell, senior vice president of Lincoln First Commercial Corporation, fixes the total indebtedness as of February 15, 1980 at $1,585,000.00. The affidavit of Herbert S. Brunnwasser, the financial vice president of Borne Chemical Company, however, totals the indebtedness as of February 15, 1980 at $1,555,000.00, with $880,000.00 of that amount representing the outstanding indebtedness on the accounts receivable loan, with the balance of $675,000.00 representing the balance due on the mortgage note loan.

4. Acknowledging the pressing need for additional financing, Borne, the debtor in possession, made application to the Court "for authorization to enter into a financing arrangement pursuant to Section 364[c] of the Bankruptcy Code on a secured basis with priority over all administrative expenses and subject to such further terms and conditions as shall be imposed by Lincoln First Commercial Corporation as lender." The application contains, inter alia, a recapitulation of the past and present financial relationship between the parties. The accounts receivable loan, as of the date of filing, is fixed at $902,000. The mortgage note balance is fixed at $681,856.10.

5. The application also contains the following value estimate of the collateralized property:

| | | |
|---|---|---|
| (a) | Eligible accounts receivable | $ 963,000.00 |
| (b) | Ineligible accounts receivable (estimated 50% collectible on face amount of $262,000.00) | 131,000.00 |
| (c) | Inventory | 1,252,000.00 |
| (d) | Real property | 1,000,000.00 |

Thus, it appears that on February 15, 1980, the date of the filing by the debtor of its Chapter 11 petition, Lincoln was secured in the total approximate amount of $3,346,000.00.

6. On February 27, 1980, Borne's counsel, in presenting the aforementioned application, represented that the ten largest creditors of Borne were given telephonic and telegraphic notice of the hearing and proposed order so as to afford them an opportunity to object.

7. At the hearing in support of the debtor's application, Herbert Brunnwasser testified that, though the debtor had taken steps to rehabilitate its financial condition, it did not at the present time have adequate funds to maintain its business. Further, that the debtor had been unable to obtain loans, either on an unsecured or secured basis; further, Brunnwasser testified to an analysis which he had prepared on the basis of continued financing by defendant Lincoln, projecting that Borne would be able to reduce the balance on the accounts receivable loan to $67,000.00 by June 30, 1980 (with eligible accounts receivable collateralized to Borne in the sum of $695,000.00), and that simultaneously therewith payments of $4,000.00 would be made on the mortgage note loan.

8. The aforesaid financing Order, originally drafted by Hahn, Hessen, Margolis & Ryan, attorneys for Lincoln, thereafter amended by Gilbert Backenroth, co-counsel

for Lincoln, was approved and consented to by counsel for the debtor.

9. The Court, noting that the parties were in accord that, in addition to the liens on Borne's inventory, accounts receivable and real property, Borne was to give Lincoln as additional security a lien on Borne's equipment and machinery, signed the financing Order.

10. The financing Order, as approved, provided *inter alia* :

(a) That Borne would enter into a financing agreement with Lincoln and execute a certificate of indebtedness therefor;

(b) That the previously executed working capital and mortgage agreements between the parties would be assumed, ratified, and reaffirmed;

(c) That the lender would secure all debts, of whatever kind or nature, whether now existing or in the future, by new liens in the equipment and machinery of the debtor, in addition to all currently held liens;

(d) That all liens now held or obtained in the future by the lender upon the property, of whatever kind or nature, of the debtor, would have superpriority over all administration expenses referenced in §§ 503[b] and 507[b] of the Bankruptcy Code;

(e) That the debtor may borrow from the lender "up to a maximum of $1,600,000.00 at any one time on a revolving basis, at the rate of 3½ percentage points above the highest prime rate or its equivalent of New York City Banks . . . ." and issue a certificate of indebtedness therefore;

(f) That the said certificate of indebtedness would have superpriority in payment over all administration expenses; and

(g) That the time of payment established in the (projected) financing agreement would not be subject to modification by a reorganization plan or further order of the Court.

11. Pursuant to the aforesaid financing Order, a certificate of indebtedness was executed by Borne, obligating Borne to pay Lincoln up to $1,600,000.00 upon the terms and conditions set forth in the Order. The certificate further provides that the loan is payable upon demand. In furtherance of the February 27, 1980 financing Order, the financing agreement of February 29, 1980 was entered into by Borne and Lincoln.

12. The financing agreement of February 29, 1980 closely tracks the terms and conditions set forth in the Court Order entered two days earlier, augmented however by certain significant provisions, reading as follows:

(paragraph 2) Any existing security agreements and/or notes to the contrary notwithstanding, all debts, obligations and liabilities of debtor to lender shall be and are hereby made payable on demand.

(paragraph 9) In the event that the debtor is able to confirm a plan of reorganization with its creditors, then Lincoln agrees to advance in its sole discretion up to 80% against any new eligible accounts receivable.[1]

13. Pursuant to the Order of this Court dated April 22, 1980, the Glendale packaging facility was sold to International Fastener Research Corp. for $450,000.00.

14. A dispute between Borne and Lincoln over quantum distribution of the proceeds of said sale immediately ensued.

15. On May 2, 1980, and again on May 5, 1980, plaintiff requested Lincoln to continue financing its accounts receivable, per the financing agreement. On each occasion defendant, as a result of a disagreement as to whether the mortgage loan debt was merged into the working capital loan creating, in effect, one superpriority administration debt, refused to continue the financing.

1. The term "Eligible Accounts Receivable" is defined in the rider as follows: All accounts sold under normal trade terms excluding only: (i) Post-Chapter 11 accounts more than 90 days past due from date of invoice; (ii) contra accounts; (iii) all accounts due from any account debtor as to which 25% or more of the total accounts owing by such debtor are past due more than 90 days; (iv) foreign accounts not covered by letter of credit . . . unperfected U.S. Government or progress billings.

16. On May 6, 1980 a hearing was held, at which the respective parties stipulated that the proceeds from the sale of machinery and equipment at the Glendale facility, totaling $327,000.00, exclusive of prior secured claims, would be turned over to Lincoln; that the terms and conditions of the financing Order would continue to control the course of financial relations between the parties; and that Borne would seek a declaratory judgment determining its rights and obligations under the financing Order and agreement.

The declaratory clarification sought by the plaintiff centers upon (1) the alleged cross-collateralization of the mortgage debt, specifically whether, as the defendant Lincoln First Commercial Corporation (Lincoln) contends, said mortgage debt, in addition to being secured by a real property mortgage dated June 14, 1978, is further secured by the inventory, accounts receivable, machinery and equipment of the debtor and debtor in possession; and (2) whether in the context of the financing order and agreement the mortgage debt is to be considered as a superpriority administration expense, as provided for in § 364[c][1] of the Bankruptcy Code. In addressing the defendant's motion for summary judgment, the sole issue here considered, the following rules and principles of law are applicable.

■ A motion for summary judgment is governed by Rule 56 of the Federal Rules of Civil Procedure, made applicable to the bankruptcy courts by Rule 756 of the Bankruptcy Rules. In granting or denying summary judgment, a court must determine whether there exist any "genuine issues of material fact, and if not, whether the moving party is entitled to a judgment as a matter of law." *E. P. Hinkle and Co., Inc. v. Manhattan Co.*, 506 F.2d 201, 204 (D.C. Cir. 1974); *Lockhart v. Hoenstine*, 411 F.2d 455 (3d Cir. 1969), *cert. den.* 396 U.S. 941, 90 S.Ct. 378, 24 L.Ed.2d 244 (1969). Whether such an issue exists is determined by considering the pleadings and affidavits submitted by the parties and other offered data.

■ It is fundamental that the burden of establishing the absence of any dispute as to a material fact is on the movant. *Adickes v. Kress and Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1969); *Long v. Parker*, 390 F.2d 816 (3d Cir. 1968). As stated in *Sagers v. Yellow Freight Systems, Inc.*, 388 F.Supp. 507, 520 (N.D.Ga. 1973), "the papers supporting the movant's position are closely scrutinized and the opposing papers are indulgently treated." Also see *Long v. Parker, supra*. The opponent will also have the benefit of having any inferences viewed from a perspective most favorable to him. *U. S. v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Diskmakers v. DeWitt Equipment Co.*, 555 F.2d 1177 (3d Cir. 1977).

■ The Third Circuit considers summary judgment to be a "drastic remedy" which should not be granted where the "slightest doubt" exists concerning the facts. *Tomalewski v. State Farm Life Insurance Co.*, 494 F.2d 882, 884 (3d Cir. 1974). Thus, it is incumbent on the plaintiff to show that no such doubt or dispute exists as to the facts. This requirement cannot be satisfied by conclusory statements or factual statements not based on personal knowledge. *Olympic Junior Inc. v. David Crystal, Inc.*, 463 F.2d 1141 (3d Cir. 1972) (as to avoiding summary judgment). Summary judgment is to be granted only in a "clear case". *Season-All Industries, Inc. v. Turkiye Sise Ve Cam Fabrikalari, A. S.*, 425 F.2d 34, 39 (3d Cir. 1970). Nevertheless, if the terms of a writing are sufficiently unambiguous that the dispute is resolvable as a matter of law, the case is an appropriate subject for summary judgment. *New Wrinkle, Inc. v. John L. Armitage & Co.*, 238 F.2d 753, 757 (3d Cir. 1956); *Dworman v. Mayor & Bd. of Aldermen*, 370 F.Supp. 1056, 1064 (D.N.J.1974).

Since the instant controversy focuses on the rights of the respective parties under the financing order of February 27, 1980, this Court, in effect, is called upon to interpret the contractual arrangement entered into by the parties on February 29, 1980 in the implementation of that order.

In the first decretal paragraph of the financing order, the parties, to wit the lender and the debtor and debtor in possession, are authorized "to assume, ratify, re-examine and adopt as their own agreements" those agreements annexed to the financing agreement as Exhibit "A" and Exhibit "B". The latter are referred to in findings of fact No. 1, *supra*. Were the order to end there, this Court would, in effect, have done little more than to approve a series of agreements, each executed on the same day, concerning which no real dispute existed prior to February 15, 1980. If there were disputes, they have not been brought to the attention of this Court in the present proceeding.

To realize the full impact of the first paragraph of the financing order, a review of the referenced instruments is required. In the annexed financing agreement dated June 14, 1978, which secures certain loans and advances to be made by Lincoln, Borne granted Lincoln a security interest in all receivables, with the term "receivables" defined as including all accounts, accounts receivable, contract rights, instruments, documents, chattel paper and leases, and any and all other forms of obligation owing to Lincoln, whether secured or unsecured. The third paragraph of the annexed supplement agreement of June 14, 1978 provides generally that the collateral shall be security for all obligations owing to Lincoln, including but not limited to advances made pursuant to the financing agreement and the factoring agreement or financing agreement originally existing between the parties.

Turning to the real property mortgage of June 14, 1978, it is clear from the language of paragraph C therein that the mortgage, in addition to securing the mortgage note of $750,000, also secures "any and all other loans and advances heretofore or hereafter made by mortgagee to, or for the account of mortgagor."

By reason of the above instruments, there can be no question that, prior to the filing of the Chapter 11 petition and the entry of the financing order, Lincoln possessed a security interest in plaintiff's accounts receivable, inventory, general intangibles and real property, securing all debts due and owing to it by Borne without limitation. Further, that the financing order authorized the continuance of the financing arrangement between Lincoln and Borne, including and extending to the debtor in possession the right to assume and adopt as their own agreements the prepetition agreements between Borne and Lincoln, subsequently implemented by the provisions of paragraph 1 of the financing agreement of February 29, 1980.

■ We turn again to the financing order, specifically to the third paragraph thereof which, in clear and unambiguous terms, provides:

"ORDERED as security for *all obligations* of the Debtor and Debtor-in-Possession to Lender of *whatever kind or nature*, the Debtor and Debtor-in-Possession are hereby authorized to grant to Lender security interests in all *now existing or hereafter created or acquired* accounts, real and personal property leases, inventory, goods, general intangibles, tax refunds, machinery and equipment, real property, and all other collateral and proceeds thereof . . . ." (Emphasis added.)

The language employed, "all obligations. . . .of whatever kind or nature" is clear and without limitation. Having found that the real property mortgage obligation remained substantially unpaid as of the date of the Chapter 11 filing, the underlying indebtedness clearly falls within the contemplation of the foregoing provision.

■ The question of whether the existing pre-Chapter 11 mortgage debt was intended, by virtue of the financing order, to be given superpriority over other administration expenses appears to be answered in language entirely free of ambiguity, as found in the fourth paragraph of the order:

"ORDERED that *any and all obligations and liabilities* of the Debtor and Debtor-in-Possession to Lender shall have priority in payment over any other debts or obligations now in existence or incurred hereafter of the Debtor and Debtor-in-

Possession and over all administrative expenses of the kind specified in Sections 503[b] or 507[b] of the Bankruptcy Code; and, said liabilities and obligations of the Debtor and Debtor-in-Possession to Lender shall be secured by a first and prior lien upon *all property of whatever kind and nature* of the Debtor and Debtor-in-Possession and the proceeds thereof, subject to existing valid liens, as of February 15, 1980, until *all obligations, debts and liabilities* of the Debtor and Debtor-in-Possession owing to Lender shall have been paid in full." (Emphasis added.)

It being acknowledged by both parties that the real property mortgage remains substantially an unpaid obligation, this Court holds that the mortgage debt is subsumed into the terms "all obligations and liabilities" and that the order, through the force of the fifth and sixth paragraphs thereof, must accordingly be read to confer on the mortgage debt a position of superpriority over all administration expenses.

The sixth paragraph authorized the issuance of a Certificate of Indebtedness obligating plaintiff to pay to defendant Lincoln up to $1.6 million. At the hearing on the proposed financing order, Herbert Brunnwasser confirmed the fact that the underlying obligation of the Certificate of Indebtedness was a composite of the old liabilities, plus advances on a revolving fund. See pages 18 and 19 of the transcript of hearing of February 27, 1980. Also see debtor's counsel's comments at pages 21 and 22 therein. Thus, there can be no question that the Certificate of Indebtedness confers on the mortgage debt the superpriority referred to above.

This Court can well appreciate Borne's lament that it never intended that which the aforesaid provisions clearly show to be the intention of the parties. In effectuating the intent of the parties, the Court is mindful that it is

"not at liberty to introduce and effectuate some supposed unrevealed intention. The actual intent of the parties is ineffective unless made known in some way in the writing. It is not the real intent but the intent expressed or apparent in the writing that controls . . . ."

*Newark Publishers' Ass'n v. Newark Typographical Union*, 22 N.J. 419, 427, 126 A.2d 348 (1956). See *Friedman v. Tappan Development Corp.*, 22 N.J. 523, 530, 126 A.2d 646 (1956); *Krosnowski v. Krosnowski*, 22 N.J. 376, 386, 126 A.2d 182 (1956). Further, as stated in *Wells v. Wilbur B. Driver Co.*, 121 N.J.Super. 185, 198, 296 A.2d 352 (Law Div. 1972), "When the contract is clear, the court is bound to enforce its terms as they are written . . . .; it may not make a better contract for either of the parties."

Plaintiff argues that the financing order approved by the Court (herein construed to grant cross-collateralization) violates the holding in *In re Texlon Corp.*, 596 F.2d 1092 (2d Cir. 1979). There, the United States Court of Appeals for the Second Circuit ruled that an *ex parte* financing order authorizing cross-collateralization of otherwise insufficiently collateralized pre-petition debt and giving the same priority over post-Chapter 11 creditors, was improvidently granted. Cautiously circumscribing its holding, the court noted that it was not saying "that under no circumstances could 'cross-collateralization' be authorized," but only that the order should not be granted *ex parte*, based solely on the representations of the debtor in possession. *Id.* at 1098. See Ordin, Case Comment, 54 Am. Bankr.L.J. 173, 178–79 (1980). By way of contrast, the order in the instant case was not granted *ex parte*, but rather only after notice and hearing. A further distinguishing factor is that in *Texlon* the cross-collateralization was given to secure a partially unsecured debt; in the instant case the pre-petition debt due and owing to the lender was already fully, if not over collateralized.

The plaintiff further argues that to give prior in payment in pre-Chapter 11 debt would violate 11 U.S.C. § 503[b][1][A], wherein provision is made for allowance of administrative expenses for services rendered after the commencement of the case. Such reliance is misplaced; the priority over any and all administration expenses

contemplated in the order falls within the purview of 11 U.S.C. § 364[c], which states in relevant part:

> "If the trustee is unable to obtain unsecured credit allowable under section 503[b][1] of this title as an administrative expense, the court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt (1) with priority over any or all administrative expenses of the kind specified in section 503[b] or 507[b] of this title...."[2]

The record, as found in the testimony of Herbert Brunnwasser, as well as his supporting affidavit, fully supports the conclusion that the threshold requirement of § 364[c] relating to the inability of the trustee (debtor in possession) to obtain unsecured credit allowable under § 503[b][1] as an administration expense, has been met. At the hearing held on February 27, 1980, Borne and Lincoln agreed that it was impossible for Borne to obtain credit to finance the debtor's plan of reorganization other than on the terms and conditions set forth in the proposed financing arrangement. Indeed, the necessity for approval of that arrangement was stressed in the debtor's application.

This Court concludes that the financing order, in clear and unambiguous terms, authorizes a superpriority of payment of the pre-Chapter 11 mortgage debt over administration expenses, which status was implemented by the Certificate of Indebtedness executed by Borne. With reference to the claim of Borne for an order compelling continued financing by the lender, in accordance with paragraph 9 of the February 29, 1980 financing agreement, this Court finds that, short of the confirmation of the plan of arrangement, such claim is premature. Reserving to the plaintiff the right to pursue such claim at the appropriate time, the motion for summary judgment in all other respects is granted.

2. In the absence of a trustee, under 11 U.S.C. § 1107[a] the debtor in possession is vested with the rights and powers of a trustee.