**In re GENERAL OIL DISTRIBUTORS, INC., et al., Debtors.**

**Bankruptcy No. 882–80516–20.**

United States Bankruptcy Court,
E. D. New York
at Westbury.

June 8, 1982.

Levin & Weintraub, New York City, for debtor; Barry Seidel and Myron Trepper, P. C., New York City, of counsel.

Kaye, Scholer, Fierman, Hays & Handler, New York City, for Marine Midland Bank; Gerald Feller, New York City, of counsel.

Brener, Wallack & Hill, Princeton, N. J., for Royal Petroleum; Nathan M. Edelstein, Newark, N. J., of counsel.

Cable, McDaniel, Bowie & Bond, Baltimore, Md., for Crown Central Petroleum; Morton A. Sacks, Baltimore, Md., of counsel.

Paul, Weiss, Rifkind, Wharton & Garrison, New York City, for Northville Caribbean; Jay Himes, New York City, of counsel.

Gordon, Hurwitz, Butowsky, Baker, Weitzen & Shalov, New York City, for Koch Fuels, Tipco Products, Mount Airy Trading, and Augsbury Corp.; Kent T. Stauffer, New York City, of counsel.

Otterbourg, Steindler, Houston & Rosen, P. C., New York City, for Creditors Committee; Glenn B. Rice, New York City, of counsel.

Mattson, Madden & Polito, Newark, N. J., for Cities Service; Frank D. Angelastro and Frank Giantomas, Newark, N. J., of counsel.

ROBERT JOHN HALL, Bankruptcy Judge.

Crown Central Petroleum Corporation ("Crown") and Royal Petroleum Corp. ("Royal")[1] (collectively "Crown-Royal") move this Court to reconsider and vacate its prior order of 10 March 1982, and by implication, its order of 29 March 1982 which confirmed and ratified in part and modified in part the March 10 order. Upon reconsideration, the Court, with such reservations as are hereinafter noted, reconfirms its 29 March 1982 order.

For the factual background of this case, the reader is referred to this Court's prior opinion, *In re General Oil Distributors, Inc.*, published at 18 B.R. 654 (Bkrtcy., E.D.N.Y. 1982). For the purposes of this motion, suffice it to say that prior to the commencement of these cases, General Oil Distributors, Inc. ("General") had been financing itself through the factoring of its accounts receivable through Marine Midland Bank, N.A. ("Marine") who retained as collateral a continuing security interest in all of General's receivables as well as the guarantees, *inter alia*, of Southville Industries Corporation ("Southville") and Inwood Trucking Corporation ("Inwood"), which are related corporations which are now also operating under chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101 *et seq.* (Supp. IV 1980).

Thereafter, on 10 March 1982 (which was five days after General's conversion from an involuntary chapter 7 to the present chapter 11) General submitted to this Court, *ex parte,* a proposed order which both scheduled a hearing for approval of a financing package it had negotiated with Marine and authorized General to borrow $300,000 immediately under the terms of that package.

The original package provided that Marine would loan General $700,000 ($300,000 upon the Court's signing of the *ex parte* order and an additional $400,000 upon the Court's approval of the package after the scheduled hearing) and would continue factoring General's accounts receivable as it had prepetition. In return, Marine was to receive as additional collateral:

(1) a continuing security interest in all of General's postpetition accounts receivable;

(2) a security interest in all of General's other unencumbered assets;

(3) the guarantees of Southville and Inwood;

(4) a second mortgage on the Inwood facility; and

(5) the guarantees of the brothers Allen and Gerald Wechler (who are the sole shareholders of the parent holding company of the debtor corporations involved herein).

In addition, the package provided that all of the above collateral would also secure General's prepetition obligations to Marine (the so-called "cross-collateralization" provision) and that if the collateral proved insufficient

---

1. Although both Crown and Royal are members of the official creditors committee of General Oil Distributors Inc., the instant motion was made independently of that committee.

to cover Marine's advances, the claim would be accorded a super priority under section 364(c)(1). Finally, the package provided that General would execute all of the customary documents (notes, security agreements, etc.) which contained the usual boilerplate language granting Marine broad rights of enforcement.

Based on General's representations that Marine was fully secured prepetition and that a financial emergency existed, the Court signed the 10 March 1982 order whereupon Marine advanced General $300,000, all of the provisions of the package (including the cross-collateralization provision) became operative and a hearing on notice was scheduled for 15 March 1982 to gain Court approval of the remainder of the package.

At the March 15 hearing, the unsecured creditors present were unanimous in their opposition to the package notwithstanding General's warnings that its denial meant an immediate liquidation which would hurt all. Ironically, the issue was resolved when the Court was forced to deny General the authority to assume its executory contract for the delivery of oil to New York City based on General's inability to give adequate assurance of future performance. See *In re General Oil Distributors, Inc.*, 18 B.R. 654 (Bkrtcy., E.D.N.Y.1982). Inasmuch as that assumption was apparently a condition precedent to Marine's obligation to perform under the financing package, General was forced to withdraw the package. *Id.* This, however, left Marine in the enviable position of having received substantial collateral as security for loans only a small part of which would have to be made (i.e., the $300,000 already advanced).

Accordingly, Crown and Royal moved this Court by an order to show cause returnable on 29 March 1982 to reconsider and vacate the March 10 order. In addition to the reasons stated above, Crown and Royal argued that:

(1) the cross-collateral provisions were prohibited by *In re Texlon Corporation*, 596 F.2d 1092 (2d Cir. 1979);

(2) the boilerplate provisions of the various security agreements violated this Court's jurisdiction by impermissibly delegating control of General to Marine; and

(3) the order might be read to reorder priorities between entities "not before the Court" and was therefore improper.

On the March 29 return date, again without notice,[2] General proffered its second financing package.

This second package rather than providing for additional loans to be made to General provided instead that General might use Marine's cash collateral under the following general conditions:

(1) General was to deposit all of the proceeds of its accounts receivable and general intangibles with Marine;

(2) General could then withdraw and use the first $550,000 of such;

(3) thereafter, for up to four weeks after the entry of the order, General could withdraw up to 90% of the money it had deposited provided it had generated at least that amount of new receivables;

(4) Marine, on the other hand, could retain the remaining 10% and apply it to reduce General's prepetition and then postpetition indebtedness;

(5) at the end of the first four weeks the arrangement was to continue as above

**2.** The Court believes that the difficulties that have arisen in these cases have been engendered in large part by the high handed and discourteous manner in which the debtor's counsel have treated their adversaries. There was no reason why the creditors' committee could not have been provided copies of the March 29 financing package prior to such date. To say that the use of cash collateral is a dispute between only the debtor and his secured party is to misstate the situation. Here,

the agreement under which General was to be able to use the cash collateral provided for Marine to retain some of the rights, including some rights of cross-collateralization, which it had been granted under the March 10 order arguably to the detriment of the unsecured creditors. Moreover, debtors' counsel obviously presented it on March 29 to defuse Crown and Royal's motion to vacate the March 10 order. Consequently, they were entitled to prior notice.

based on a 85%—15% split for an additional four weeks;

(6) whereupon unless continued by an order of this Court, the arrangement would cease and Marine would be entitled to apply all the funds still on deposit against General's pre and postpetition debt. Additionally, other than the possible rights of cross-collateralization in General's accounts receivable that this arrangement defined, Marine released such rights in General's other assets. Moreover, Marine agreed that once $550,000 of new receivables had been created under this arrangement the cross-collateralization rights it held in the other related debtors-in-possession would also be released. Otherwise, however, the March 29 package "confirmed and ratified" the March 10 ex parte order.

At the March 29 hearing, the creditors' committee, who were seeing this package for the first time, asked for an adjournment that it might be more fully studied. In addition, Royal and Crown renewed their objections arguing that to the extent this package ratified those elements of the first package that were invalid, it too was invalid. General countered by arguing that the March 10 order was not invalid, if it were invalid, this package cured it, and that time was of the essence. Whereupon testimony was taken which indicated that General was in default on many of its major contracts and that these customers were presently or about to purchase products elsewhere destroying not only General's only source of income but also its good will.

Based thereon, the Court conditionally approved the second package. Such approval, however, was expressly without prejudice to Crown's and Royal's contention that it contained impermissible terms, which matter the Court took under advisement.

## Discussion

█ Although it has been criticized, see Ordin, In re Texlon Corporation: Finality of Order of Bankruptcy Court, 54 Am. Bankr.L.J. 173 (1980), the law in this circuit is that cross-collateralization provisions may not be approved ex parte, but only after notice and a hearing. In re Texlon Corporation, 596 F.2d 1092, 1098 (2d Cir. 1979); In re Flagstaff Foodservice Corporation, 14 B.R. 462, 468 (Bkrtcy., S.D.N.Y.1981); In re Borne Chemical Company, 9 B.R. 263, 269 (Bkrtcy., D.N.J.1981). That being the case, were the only order before this Court the March 10 order, the Court might well have granted Crown and Royal the relief they sought.[3] Cf. In re Texlon Corporation 596 F.2d at 1101 (to vacate must restore lender to status quo ante). However, the March 10 order now only exists to the extent that it was ratified after a hearing, by the March 29 order which deleted several of the objectionable provisions. For example, the March 29 order released the cross-collateral rights Marine had acquired in General's assets other than its accounts receivable. Similarly, Marine's rights to cross-collateralize its prepetition debt out of the assets of the other debtors-in-possession have probably also been released.[4] Moreover, counsel for Marine represented to this Court at the March 29 hearing that it understood its enforcement rights under the various loan documents still to be subject to the section 362 stay. It would appear, therefore, that to a great extent the Crown-Royal motion is moot.

More substantive is Crown-Royal's position that the March 29 order is invalid to

---

**3.** It has been suggested that where the lender was fully secured prepetition, the Texlon notice rule might not apply. In re Borne Chemical Company, 9 B.R. 263, 269 (Bkrtcy., D.N.J. 1981). This Court does not know whether in fact Marine was or was not full secured prepetition, nor that if it was, such fact would justify avoidance of Texlon's notice requirements. However, inasmuch as the Court finds the March 10 order no longer before it except as ratified by the March 29 order which was approved after a hearing, it does not have to decide such question.

**4.** Inasmuch as eight weeks have passed since March 29, and Marine has consented to a continuing of the present financing, it would appear that General has generated sufficient accounts receivable to trigger the release of this collateral.

 

the extent it approves any cross-collateralization of prepetition debts. The case law, however, is to the contrary.

*In re Texlon Corporation* itself held:

In order to decide this case we are not obliged, however, to say that under no conceivable circumstances could "cross-collateralization" be authorized.

596 F.2d at 1098. And subsequent cases have approved such terms where they were necessary for the debtor-in-possession to obtain financing. *See In re Flagstaff Food Service Corporation*, 14 B.R. 462 (Bkrtcy., S.D.N.Y.1981); *In re Borne Chemical Company*, 9 B.R. 263 (Bkrtcy., D.N.J.1981).

█ In the case at bar, the only cross-collateral rights that Marine has clearly retained are in General's accounts receivable. However, under the present financing arrangement General can use the majority of its accounts receivable as it collects them. Accordingly, without a cross-collateralization provision, as General "rolled" its prepetition receivables into postpetition receivables, Marine would find itself holding millions of dollars in security for the $300,000 postpetition loan and no collateral for General's prepetition debts. Obviously, under such circumstances, allowing cross-collateralization was justified.

Finally, Crown-Royal objects to the March 29 order on the grounds that it might be read to reorder priorities between entities "not before the Court".

Crown-Royal never made it clear to the Court what it meant by this objection. The Court does note, however, that the March 29 order apparently confirmed the postpetition guarantees of Southville and Inwood as well as the giving of a mortgage by the latter to Marine as additional security for its $300,000 loan to General. In the absence of postpetition consideration flowing to these debtors-in-possession in exchange therefore or a substantive consolidation,[5] it appears that such a transaction would not be enforceable. *See* 11 U.S.C. § 549; *In re Walsh Construction, Inc.*, 669 F.2d 1325, 1329 (9th Cir. 1982). However, inasmuch as

the validity of these transactions has not clearly been put in issue, Marine is not now attempting to realize on this collateral and a later substantive consolidation might well cure any such defects, the Court finds the issue not ripe for adjudication at this time.

*Conclusion*

Upon reconsideration, the Court, with such reservations as are noted above, reconfirms the March 29 order (and by implication, the March 10 order to the extent that it was ratified by the March 29 order.

Settle Order.

---

**5.** These cases were consolidated for administrative purposes only.