In re GENERAL OIL DISTRIBUTORS, INC., et al., Debtors.

CROWN CENTRAL PETROLEUM CORPORATION, Plaintiff,

v.

Alan WECHTER, Gerald Wechter, Southville Oil Corporation, Heidi Petroleum Corporation, Gasoline Truck Leasing Corp. of America, Inc., "E" Corporation, Pride Oil Corporation, Inwood Trucking Corporation, and Marine Midland Bank, N.A., Defendants.

Bankruptcy No. 882–80516–20.
Adv. No. 882–0379–20.

United States Bankruptcy Court,
E. D. New York,
at Westbury.

July 22, 1982.

Levin & Weintraub, P.C., New York City, for debtor; Barry Seidel, New York City, of counsel.

Weisman, Celler, Spett, Modlin & Wertheimer, New York City, for defendants other than Marine Midland Bank; Steven L. Cohen, New York City, of counsel.

Cable, McDaniel, Bowie & Bond, Baltimore, Md., Gehrig, Ritter, Coffey, McHale & McBride, Melville, N. Y., for Crown Central Petroleum; Craig R. Olsen, Melville, N. Y., Morton A. Sachs, Baltimore, Md., of counsel.

Kaye, Scholer, Fierman, Hays & Handler, New York City, for Marine Midland Bank; Harvey A. Strickon, New York City, of counsel.

## MEMORANDUM

ROBERT JOHN HALL, Bankruptcy Judge.

Marine Midland Bank, N.A. ("Marine") and all of the other above captioned defendants (collectively "the defendants") move this Court pursuant to Interim Rule 7004(j) to remand the above captioned proceeding to Nassau Supreme Court upon the grounds that this Court lacks jurisdiction over the subject matter of the dispute, or in the alternative, that the removal was unauthorized by the Interim Rules. Motion denied.

For a detailed history of these proceedings, the reader is referred to this Court's prior opinions, *In re General Oil Distributors, Inc.*, 18 B.R. 654 (Bkrtcy.E.D.N.Y.1982) and 20 B.R. 873 (Bkrtcy.E.D.N.Y.1982). For the purposes of this motion, suffice it to say that Southville Oil Corporation is a holding company all of whose stock is owned equally by the brothers Allen and Gerald Wechter. General Oil Distributors, Inc. ("General") and Wechter Petroleum Corporation ("Wechter") (collectively "the debtors") are two of its wholly owned subsidiaries both of which are presently operating as debtors-in-possession under chapter 11 of the Bankruptcy Code, 11 U.S.C. § 1101 *et seq.* (Supp. IV 1980).[1] Similarly, all of the above captioned defendants (with the obvious exception of Marine and the Wechter brothers) are also wholly owned subsidiaries of Southville Oil Corporation. None of the above named defendants, however, has filed for relief under the Bankruptcy Code.

General is a wholesale distributor of petroleum products. Wechter, on the other hand, owns and operates a petroleum storage facility which is apparently analogous to a gasoline warehouse. Prior to the commencement of these cases, General was factoring its accounts receivable through Marine who retained as collateral a continuing security interest in all of General's receivables.[2] Thereafter, on 10 March 1982, which was shortly after General had filed for relief with this Court, based on General's representations that a financial emergency existed and that Marine was fully secured, this Court approved *ex parte* an interim financing package under which Marine was to loan General $700,000 and continue factoring General's accounts receivable. In return, the package provided, *inter alia*, for the vacatur of the automatic stay that Marine might collect on General's prepetition receivables. When this package fell apart, however, *see In re General Oil Distributors, Inc.*, 18 B.R. 654, 655 (Bkrtcy.E.D.N.Y.1982), this Court approved a second package, this time on notice to the creditors, which provided that General might use the bulk of the proceeds of its remaining receivables, notwithstanding Marine's security interest therein, subject to Marine's right to gradually pay down General's debt. *In re General Oil Distributors, Inc.*, 20 B.R. 873 (Bkrtcy. E.D.N.Y.1982). By this time, however, Marine had collected several million dollars of presumably estate assets on its apparently secured loans.

### The State Court Action

In the interim, in April 1982, which was after the commencement of all of these cases, Crown Central Petroleum Corporation ("Crown") commenced an action in Nassau Supreme Court against the defendants. The gravamen of the complaint was that Crown had deposited approximately $1,000,000 worth of gasoline in the Wechter storage facility under a bailment contract;

1. Southville Industries Corporation ("Southville") and Inwood Trucking Corporation ("Inwood") are also subsidiaries of Southville Oil Corporation and are also operating as debtors-in-possession. Although there has not been a substantive consolidation, the four cases are being jointly administered.

2. As additional collateral, Marine has also obtained the guarantees of the Wechter brothers, Southville and Inwood.

that Wechter in conspiracy with some or all of the other related companies or the brothers themselves had converted the gasoline and sold it; whereupon the proceeds found their way into Marine's vaults as it collected on General's accounts receivable. Accordingly, the complaint prayed for a judgment against all of the defendants awarding it possession of the gasoline or the proceeds thereof; or in the alternative, compensatory damages of $1,163,703 plus punitive damages of $5,000,000. Moreover, it is clear that the only reason that General and Wechter were not named as party defendants in this complaint was because of the section 362 stay.

### The Actions to Vacate the Stay

Consequently, by a complaint filed on 29 April 1982, Crown commenced actions in this Court against both General and Wechter (1) seeking to vacate the automatic stay that the debtors might be joined as defendants in the state court action and (2) seeking a declaration that any such judgment would be nondischargeable. In response, the debtors moved to dismiss the complaint

for failing to state a claim upon which relief could be granted.

At the 25 May 1982 trial, the Court initially expressed its reservations as to whether the complaint did state a claim for relief inasmuch as the Code seems clearly to indicate that all debts are discharged by an order of confirmation in a non-liquidating corporate chapter 11 proceeding. Transcript of 25 May 1982 ("Tr.") at 15.[3] However, the Court also recognized that the resolution of the state pleaded causes of action would have great relevance in these reorganizations. See notes 5 & 7 infra. Accordingly the Court feared that by allowing Crown to join the debtors in the state forum would be to allow the state court to determine major issues in these cases, which would probably directly involve the application of bankruptcy law, Tr. at 17,[4] notwithstanding that such issues might well have to be redetermined here. Tr. at 16, 18.[5]

In addition, both the debtor and the creditor's committee voiced their concern over the anticipated delay trying this case in Nassau Supreme Court would entail[6] and projected their difficulties in planning a reorganization pending the outcome.[7]

---

**3.** Moreover, should these cases become liquidating chapter 11 proceedings or straight chapter 7 proceedings none of the debtors' debts would be discharged. 11 U.S.C. §§ 727(a)(1), 1141(d)(3).

**4.** In addition to whatever else Crown must establish in order to prevail over Marine and the debtors, Crown must establish that its rights to the over $1,000,000 of gasoline are superior to two debtors-in-possession with their concomitant avoiding powers, see 11 U.S.C. §§ 103(a), 544–549, 1107(a), and thereby demonstrate the impropriety of this Court's orders which allowed Marine to collect these funds in payments on its claims.

**5.** For example, a technical conversion under state law may or may not evince sufficient bad faith to justify denial of confirmation. The underlying judgment would have to be examined to determine if discharging such a debt would be abusive to Congress' underlying goals and aims when it enacted chapter 11. See 11 U.S.C. § 1129(a)(3). Moreover, such a determination is seldom possible from the face of a judgment. Rather the underlying facts must be discovered often necessitating relitigating the action.

Similarly, should Crown be successful in establishing a conversion and tracing the funds to Marine, it is entirely possible that other creditors would seek to use that judgment as a basis for equitably subordinating Marine's claims to their own. See 11 U.S.C. § 510(c). Again, however, the underlying basis of the judgment would have to be examined. Moreover, should it be found insufficient to state a claim under section 510(c) then it would have to be disregarded notwithstanding the fact that many of the elements of the Code claim may have already been proved.

**6.** It was suggested without contradiction that to obtain a jury verdict in Nassau Supreme Court would take two to five years. Tr. at 17. In this Court, in contradistinction, the parties can try their case as soon as they complete their discovery. Accordingly, unless the parties wish to prosecute parallel lawsuits simultaneously, they will have to wait two to five years to litigate such issues as the bona fides of the plan or the possible equitable subordination of Marine's claims.

**7.** For example, should Crown be successful in its action against Marine, instead of Crown having a one million dollar plus unsecured

In response, Crown indicated that it had no overwhelming desire to litigate this case in Nassau Supreme Court. Rather, it had only been attempting to find a convenient forum where it could properly join all of the debtors and defendants. Inasmuch as Marine is allegedly a national bank allegedly established in Buffalo, New York, Crown had opted for the New York Courts to avoid any venue problems. *Cf.* 12 U.S.C. § 94 (1976).[8] However, inasmuch as the Court indicated its preference to see this case tried before it, Crown acceded to this request. Tr. at 28.[9] Accordingly, by an application filed 2 June 1982, Crown removed the state court action to this Court.[10]

### Remand

Which brings us to the instant motions. As indicated above, Marine and all of the other named defendants have moved this Court for an order remanding the state court action to Nassau Supreme Court upon the grounds that this Court does not have subject-matter jurisdiction over the dispute, or in the alternative, that the removal was not authorized by the applicable procedural rules.[11]

### Subject-Matter Jurisdiction

The defendants contend that this Court cannot exercise jurisdiction "to decide what is essentially a private dispute between non-debtor parties." Marine brief at 5. Were that premise correct, the conclusion might have followed. The removed action, however, is not a private dispute between non-debtor parties. Rather, after the debtors are joined (as is Crown's stated intention) this will be an action in which named debtors are proper and perhaps indispensable parties [12] to determine whether over one million dollars of gasoline ever properly came into their respective chapter 11 estates or whether, upon reconsideration, the Court should find that Marine was impermissibly authorized by this Court's orders to receive someone else's money in payment on its claims. Moreover, it is a dispute which may materially alter all of the parties' standing as creditors vis-a-vis each other and each estate while revealing information which may well impact on such

---

claim against the debtors, Marine would then have a possibly secured, possibly unsecured claim for a like amount. Moreover, were this claim undersecured, the various cross corporate and individual guarantees would become activated. *See* note 2 *supra.*

**8.** Section 94 provides: *Venue of Suits*

Actions and proceedings against any association under this chapter may be had in any district or Territorial court of the United States held within the district in which such association may be established, or in any State, county, or municipal court in the county or city in which said association is located having jurisdiction in similar cases.

12 U.S.C. § 94.

**9.** It should also be noted that as of 25 May 1982, the state court action had only progressed to the point that the defendant's answers were first coming due.

**10.** Section 1478 provides:

(a) A party may remove any claim or cause of action in a civil action, other than a proceeding before the United States Tax Court or a civil action by a Government unit to enforce such governmental unit's police or regulatory power, to the bankruptcy court for the district where such civil action is

pending, if the bankruptcy courts have jurisdiction over such claim or cause of action.

(b) The court to which such claim or cause of action is removed may remand such claim or cause of action on any equitable ground. An order under this subsection remanding a claim or cause of action, or a decision not so remanding, is not reviewable by appeal or otherwise.

28 U.S.C. § 1478 (Supp. IV 1980).

**11.** To date, Marine has failed to object on the grounds of improper venue.

**12.** Should Crown have to proceed in state court without the debtors and should Crown be successful in establishing a conversion and tracing and recovering the proceeds therefrom from Marine, Marine would possibly have a claim for indemnification against one or both of the estates. However, inasmuch as the debtors would not have been parties to the state court action, the basis for the claim would arguably not be binding on them. Consequently, this matter might well have to be relitigated with Marine subject to the danger of inconsistent verdicts. In fact, the New York courts might refuse to take the case under such circumstances. *See* N.Y.Civ.Prac.Law §§ 1001(b), 3211(a)(10) (McKinney 1970).

related questions as the debtors' *bona fides* in commencing these proceedings and Marine's possibly inequitable conduct: issues which will probably have to be resolved before these estates can be fully administered. Accordingly, this Court finds that this proceeding is sufficiently related to cases under title 11 for it to exercise jurisdiction over the dispute. *See* 28 U.S.C. § 1471 (Supp. IV 1980).[13]

### Removal Procedure

In addition to objecting to the jurisdiction of this Court, the defendants also contend that inasmuch as Crown commenced this action in the state court after the filing of the predicate bankruptcies its removal of the action now is unauthorized.

**13.** Section 1471 provides in pertinent part:
> (b) Notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11 or arising in or related to cases under title 11.
> (c) The bankruptcy court for the district in which a case under title 11 is commenced shall exercise all of the jurisdiction conferred by this section on the district courts.

28 U.S.C. § 1471(b), (c). The case law under this statute indicates two lines of thought. The more "liberal" line would find jurisdiction whenever "the outcome of the proceeding could conceivably have *any effect upon the estate* being administered in bankruptcy." *Mazur v. U.S. Air Duct Corporation*, 8 B.R. 848, 851 (Bkrtcy.N.D.N.Y.1981) (emphasis in original); *see, e.g., First National Bank v. Johnie T. Patton, Inc.*, 12 B.R. 470 (Bkrtcy.D.Nev.1981); *Hurt v. Cypress Bank*, 9 B.R. 749 (Bkrtcy.N.D. Ga.1981); *Young v. Sultan LTD. (In re Lucasa International)*, 6 B.R. 717 (Bkrtcy.S.D.N.Y. 1980); *Westinghouse Credit Corporation v. Yeary (In re Brothers Coal Company)*, 6 B.R. 567 (Bkrtcy.W.D.Va.1980). Similarly, this line of cases would find jurisdiction whenever such a determination was necessary to avoid a multiplicity of lawsuits with the concomitant delay and expense such entails. *See Young v. Sultan LTD. (In re Lucasa International)*, 6 B.R. 717 (Bkrtcy.S.D.N.Y.1980); *see, e.g., Wittkop v. Johnson*, 11 B.R. 803 (Bkrtcy.N.D.Ohio 1981); *Diego v. Zamost*, 7 B.R. 859 (Bkrtcy.S.D.Ca. 1980); *see also* S.Rep.No.989, 95th Cong., 2d Sess. 17, *reprinted in* [1978] U.S.Code & Ad. News 5787, 5803. The more conservative line would apparently find jurisdiction only where the action clearly involved property of the estate, *see, e.g., Murdock v. Allina (In re Curtina International)*, 15 B.R. 993 (Bkrtcy.S.D.N.Y.

The applicable Rule provides in pertinent part:

(2) *Time for Filing by Defendant.* The application for removal of a civil action or proceeding shall be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based, or within 30 days after the service of summons upon the defendant if such initial pleading has then been filed in court and is not required to be served on the defendant, whichever period is shorter.

(3) *Time for Filing by Any Party.* · If the civil action or proceeding stated by

1981); *Nelson White Construction Management Corporation v. McConaghy*, 15 B.R. 480 (Bkrtcy.E.D.Va.1981), or where a determination of the controversy is required for the proper administration or reorganization of the estate, *see, e.g., Heagle v. Haug*, 19 B.R. 223, 9 B.C.D. 61 (Bkrtcy.D.Or.1982); *Albany Bank & Trust Co. v. Jenner & Block (In re Systems Marketing Consolidated)*, 19 B.R. 519, 8 B.C.D. 1335 (Bkrtcy.N.D.Ill.1982).

In this Court's opinion, the former analysis is the correct one. Congress intended to give the bankruptcy courts the broadest possible jurisdiction to determine any dispute which might affect the bankruptcy proceeding. 1 *Collier on Bankruptcy* ¶ 3.01 at 3–49 (15th ed. 1982). That is not to say, however, that a court must exercise all the jurisdiction it possesses. Rather, should the nexus between the foreign action and the bankruptcy case be stretched too thin, abstention may well prove the more appropriate course. *Cf.* 28 U.S.C. § 1471(d) (bankruptcy court may abstain from hearing a proceeding notwithstanding such is within its jurisdiction). But that is not to say that the court does not have jurisdiction.

However, in the instant case, the Court is of the opinion that it does not have to decide this question. Assuming, *arguendo,* that the more conservative line of analysis is correct, this Court will still have jurisdiction of this dispute if only for the reason that its resolution is probably necessary before a reorganization can be effectuated. *Cf. also* 28 U.S.C. § 1471(e) (bankruptcy court has exclusive jurisdiction of property of the estate wherever located); *Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 15 L.Ed.2d 391 (1966) bankruptcy court has summary jurisdiction to reconsider claims notwithstanding property no longer within possession of the estate.)

the initial pleading is not within the jurisdiction of the bankruptcy court when initiated, an application for removal may be filed by a party within 30 days after the order for relief in the case under the Bankruptcy Code.

Interim Rule 7004(a)(2), (3).[14]

In response, Crown argues that just because the Rule does not specifically authorize removal under the instant circumstances does not mean that the Rule prohibits it. The Committee Note to the Rule, however, indicates otherwise.

> If an action is within the bankruptcy court's jurisdiction when filed, only a defendant may remove. For example, if a trustee elects to sue in the district court or state court, he has made an election to proceed in that forum and removal is inappropriate.

Note to Rule 7004. In other words, the plaintiff is apparently prohibited on equitable grounds from removing an action he has elected to commence elsewhere. 1 *Collier on Bankruptcy* ¶ 3.01 at 3–63.

■ In the instant case, however, Crown did not remove this action out of any forum shopping whim but rather upon the insistence of the debtors, the creditors' committee and the Court. Consequently, there are no equitable obstacles to Crown's removing this action. In addition, the removal statute itself reveals no procedural limitations on any party's right to remove. *See* 28 U.S.C. § 1478(a); *Copper Mountain, Inc. v. Project Oneco, Inc.*, 3 B.R. 284 (Bkrtcy.D. Colo.1980); *cf.* 28 U.S.C. § 1446. Rather,

such limitations were created solely by the Interim Rule which became a Local Rule of this Court only to the extent that its not inconsistent with the Code. *See* note 14 *supra.*

In analogous situations, based on the rationale that it is the statute that controls and not the rule, *Ford Motor Company v. Transport Indemnity Company*, 508 F.Supp. 1092, 1094 (E.D.Mich.1981), and that Congress has expressly taken away the Supreme Court's power to make substantive changes in the present bankruptcy legislation via its rule making authority, *see* Section 247 of the Bankruptcy Reform Act of 1978, Pub.L.598, 92 Stat. 2549, 2672 ("the Reform Act"); House Report at 449, *reprinted in* [1978] U.S.Code Cong. & Ad. News at 6405; 1 *Collier on Bankruptcy* ¶ 3.04 at 3–329,[15] courts have invalidated or disregarded Interim Rules which have been found to be inconsistent with the Code. *See Circle Litho, Inc. v. Ryder Truck Lines, Inc.*, 12 B.R. 752 (Bkrtcy.D.Conn.1981); *Mazur v. U.S. Air Duct Corporation*, 8 B.R. 848, 850 (Bkrtcy.N.D.N.Y.1981); *In re Tartan Construction Company*, 4 B.R. 655 (Bkrtcy.D.Neb.1980); *Vlahos v. Pitts*, 2 B.R. 476, 1 C.B.C.2d 241 (Bkrtcy.C.D.Ca.1979). *But see Dupont Energy Management Co. v. Delta Group, LTD.*, 16 B.R. 333 (Bkrtcy.N. D.Tex.1982); *James Green Construction Co. v. Alton Telegraph Printing Co.*, 15 B.R. 367 (Bkrtcy.S.D.Ill.1981); *McCallum v. Upland Car Wash*, 7 B.R. 76 (Bkrtcy.C.D.Ca.1980).[16]

■ Accordingly, this Court finds that to the extent Interim Rule 7004(a) prohibits

14. Pursuant to 28 U.S.C. § 2075 (Supp. IV 1980), the Advisory Committee on Bankruptcy Rules of the Judicial Conference of the United States ("the Committee") issued suggested Interim Rules in 1979 for practice under the Bankruptcy Code. *See also* H.R.Rep.No.595, 95th Cong., 1st Sess. 292, 307 (1977), *reprinted in* [1978] U.S.Code Cong. & Ad.News 5963, 6249, 6264. As the Committee's introduction to these suggested Rules indicate, however, inasmuch as they have not been approved by the Supreme Court nor Congress, they are binding only to the extent that they have been adopted as local rules of court. Rule 1(b) of the Local Rules of this Court adopted Interim Rule 7004 "except insofar as [it is] inconsistent with the substantive provisions of the Bankruptcy Code."

15. The amendment to section 2075 effected by section 247 of the Reform Act became effective 6 November 1978. Section 402(d) of the Reform Act, 92 Stat. at 2682.

16. These cases, relying on the case law under 28 U.S.C. § 1446, held that the 30-day time limit under Rule 7004(a)(2) and (3) had to be strictly enforced. Although these cases may be distinguished, the Court wishes to note its disapproval. The procedure for removal to a district court is proscribed by the statute itself while the procedures for removal to this Court are not. Accordingly, reliance on the case law under section 1446 would appear to be misplaced.

removal of a claim or cause of action by a plaintiff when such plaintiff has commenced an action outside of this Court during the pendency of a predicate bankruptcy under any and all circumstances, it is invalid as being inconsistent with sections 1471 and 1478 of title 28. Moreover, in light of the equities and the practical considerations of this case,[17] as well as the various statutory grants of authority, the Court authorizes, approves and confirms the removal. *See* 11 U.S.C. § 105(a); 28 U.S.C. §§ 1471, 1478 and 1481.

### Conclusion

The Court having found that it has subject matter jurisdiction over the removed action and that there are no procedural impediments to the removal, the motion to remand is denied.

Settle Order.

---

17. Should the Court feel compelled to remand, the Court would probably feel compelled to lift the section 362 stay that Crown might be able to join the debtors in the state court, *see* note 12 *supra,* where the debtors would have the right to remove some or all of the action back once again. *See* Interim Rule 7004(a)(2).